65 S.E.2d 300 (1951)
234 N.C. 3
HANSLEY
v.
TILTON et al.
No. 749.
Supreme Court of North Carolina.
June 7, 1951.
*301 Deal & Hutchins, Winston-Salem, for plaintiff, appellee.
Hastings & Booe and Womble, Carlyle, Martin & Sandridge, all of Winston-Salem, for defendant, Jack Tilton, appellant.
ERVIN, Justice.
The assignments of error raise these questions:
1. Did the court err in refusing to dismiss the action upon a compulsory nonsuit after all the evidence on both sides was in?
2. Did the court err in excluding the testimony of James Malcolm, a witness for the defense, that the clearance lights on the school bus were burning three nights before the collision?
3. Did the court commit prejudicial error in the charge to the jury?
We consider these questions in their numerical order.
The testimony offered by plaintiff consisted of circumstances observed at the scene of the collision immediately after its occurrence, and of extrajudicial admissions made by the defendant at that time and place. When this evidence is interpreted most favorably for plaintiff, it makes out this case:
1. The Old Rural Hall Road courses northwardly and southwardly where it crosses Muddy Creek, a natural watercourse, upon a bridge having side railings and an inside width of only 15 feet and 4 inches. Both approaches to the bridge, which is approximately 76 feet long, are relatively straight for substantial distances, and are marked by warning signs bearing the lettering "narrow bridge."
2. The intestate's automobile, which was about 66 inches wide, was proceeding south, and the school bus, which was 95 inches wide, was traveling north. The headlights of both vehicles were burning as they neared the bridge in the darkness, but the school bus was not displaying any clearance lights indicating its character or extreme width. For this reason, the intestate, who reached and entered the bridge first, had no reason to anticipate that the two vehicles would experience any difficulty in passing each other in case they met on the bridge.
3. Meanwhile, the defendant, who had full knowledge of the narrowness of the bridge and of the character and abnormal width of the school bus, approached the bridge from the south at a speed of 37 miles an hour, observed the intestate's automobile nearing the bridge from the north, and "thought he could beat him (i. e., the intestate) across the bridge." The defendant *302 thereupon "pressed his accelerator down to the floor, and tried to get across."
4. After the school bus entered the bridge, the intestate was able to observe its character and extreme width for the first time by his own headlights. He forthwith undertook to avoid the oncoming school bus by driving his automobile so close to the railing on his right as to rub the right side of his automobile against such railing. Notwithstanding the abnormal width of the school bus and the narrowness of the bridge, the defendant could still have averted any collision by yielding to the intestate's automobile its proportionate part of the available passageway. This he failed to do. As a consequence, the two vehicles collided at a point 15 feet and 6 inches from the south end of the bridge. The north bound school bus knocked the south bound automobile 12 inches northward, and continued on its way for about 375 feet before coming to rest. The automobile was demolished, and the intestate suffered instant death. The lighting system of the school bus was not damaged by the collision. An examination of such system, which was made at the scene immediately after the accident, revealed that the clearance lights were not even connected with any available electric current.
This evidence suffices to show that the defendant was negligent in the operation of the school bus in these respects: (1) That he failed to keep a reasonably careful lookout, Register v. Gibbs, 233 N. C. 456, 64 S.E.2d 280; (2) that he failed to keep the school bus under reasonable control, Register v. Gibbs, supra; (3) that he drove the school bus on the highway at a speed greater than was reasonable and prudent under the conditions then existing, G.S. § 20-141 (a); (4) that he drove the school bus, which had a width in excess of eighty inches, on the highway during the nighttime without displaying burning clearance lights thereon as required by statute, G.S. § 20-129(a, e), Thomas v. Thurston Motor Lines, 230 N.C. 122, 52 S.E.2d 377; (5) that he failed to yield the right of way on the bridge to the intestate's automobile, the vehicle entering the bridge first, when he knew, or by the exercise of reasonable care would have known, that the bridge was too narrow for both of the vehicles to pass safely, Brown v. Southern Paper Products Co., Inc., 222 N.C. 626, 24 S.E. 2d 334, 60 C.J.S., Motor Vehicles, § 315; and (6) that on meeting the intestate's automobile proceeding in the opposite direction on the bridge, he failed to pass the automobile to the right, giving it "at least one-half of the main-traveled portion of the roadway as nearly as possible." G.S. § 20-148. This evidence likewise warrants a finding that such negligence on the part of the defendant was the sole proximate cause of the death of the intestate and of the damage to his automobile. These things being true, the question whether the defendant was guilty of actionable negligence, and the question whether the plaintiff's intestate was guilty of contributory negligence were for the jury.
To be sure, the defendant offered testimony tending to show that the school bus entered the bridge first; that notwithstanding this, the plaintiff's intestate drove onto the bridge at a speed of 60 or 65 miles an hour; and that on meeting the school bus on the bridge, the intestate suddenly turned his automobile to the left at unabated speed into the pathway of the oncoming school bus, causing the two vehicles to collide. While this evidence would have justified the jury in answering either the first issue or the second issue in favor of the defendant had the jury accepted it, the trial judge rightly ignored it in ruling on the motion to nonsuit. This testimony was presented by the defense, and merely contradicted that offered by plaintiff. Bundy v. Powell, 229 N.C. 707, 51 S.E.2d 307.
The defendant insists, however, that the action ought to have been nonsuited in the court below even if the testimony adduced by the administrator was sufficient to show actionable negligence on his part, and freedom from contributory negligence on the part of the intestate. These arguments are advanced by him to *303 sustain this position: The county board of education is an agency or instrumentality of the State. As such, it is not liable for injury or loss resulting from the negligence of its officers, agents, or employees. Inasmuch as the defendant was driving the school bus for the county board of education, he is clothed with the governmental immunity of the board, and in consequence, is exempt from liability to the plaintiff in the instant action.
This contention is not tenable. Undoubtedly the county board of education, as an agency or instrumentality of the State, enjoys immunity to liability for injury or loss resulting from the negligence of the driver of its school bus. Benton v. Board of Education, 201 N.C. 653, 161 S.E. 96. But the driver of the school bus, who is a mere employee performing a mechanical task, is personally liable for his own actionable negligence.
This question was decided in principle adversely to the defendant in Miller v. Jones, 224 N.C. 783, 32 S.E.2d 594, 597, where the late Justice Seawell said: "The suggested immunity has never been extended to a mere employee of a governmental agency upon this principle, although employed upon public works, since the compelling reasons for the nonliability of a public officer, clothed with discretion, are entirely absent. Of course, a mere employee, doing a mechanical job, as were the defendants here, must exercise some sort of judgment in plying his shovel or driving his truckbut he is in no sense invested with a discretion which attends a public officer in the discharge of public or governmental duties, not ministerial in their character. In short, the defendants were not public officers, nor were they in the performance of any discretionary act. The mere fact that a person charged with negligence is an employee of others to whom immunity from liability is extended on grounds of public policy does not thereby excuse him from liability for negligence in the manner in which his duties are performed, or for performing a lawful act in an unlawful manner. The authorities generally hold the employee individually liable for negligence in the performance of his duties, notwithstanding the immunity of his employer, although such negligence may not be imputed to the employer on the principle of respondeat superior, when such employer is clothed with a governmental immunity under the rule."
This brings us to the question whether the court erred in excluding the proffered testimony of the defense witness, James Malcolm, to the effect that he saw "the clearance lights * * * burning on the bus" three nights before the collision, to-wit, on the night of September 16, 1949. This testimony was tendered by the defense as a basis for invoking the evidential rule that "Proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference, within logical limits, that it exists at a subsequent time." 31 C.J.S., Evidence, § 124. It may be argued with much reason that this rule does not apply in the instant case because there is nothing of a continuous nature in the fact that the clearance lights on a school bus are turned on and burning on a particular occasion. Fanelty v. Rogers Jewelers, Inc., 230 N.C. 694, 55 S.E.2d 493. Be this as it may, we are constrained to hold on the present record that the defendant has failed to demonstrate on this appeal that he has suffered any prejudice on account of the exclusion of this testimony, for the very simple reason that all the evidence relating to the matter at the trial indicated strongly that the clearance lights on the school bus were neither burning nor capable of burning at the time of the collision. Such evidence certainly disclosed a change in the mechanical condition of the clearance lights, and in that way rebutted any possible inference of any continuance of their former state.
The defense reserved an exception to a portion of the charge in which the court instructed the jury in specific detail that the defendant would be chargeable with negligence if he drove a school bus having a width in excess of eighty inches on the highway during the nighttime without *304 displaying burning clearance lights thereon as required by the statute codified as G.S. § 20-129. This instruction was correct, even though the duty to keep the lighting system on the school bus in good working order may have rested on the county board of education and not on the defendant. The latter was not empowered to set a positive statute at naught merely because his employer, the county board of education, may have furnished him a school bus with a defective lighting system.
The court used the word "plaintiff" instead of the technically correct term "plaintiff's intestate" on several occasions during the course of the charge. When the instructions of the judge to the jury are read contextually, however, it is evident that these slips of the tongue did not confuse or mislead the jury.
For the reasons given, there is in law
No error.