STATE, use of CLARK et ux. *v.* FERLING

CLARK, administrator *v.* FERLING

(Two Appeals In One Record)

[No. 228, September Term, 1958.]

*Decided May 13, 1959.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*Claude L. Callegary* and *Christopher H. Foreman,* with whom were *Callegary, Bracken & Callegary* on the brief, for the appellants.

*Joseph S. Kaufman, Assistant Attorney General,* and *Robert*

*L. Karwacki,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

These are appeals by John W. Clark and Anna Marie Clark, surviving parents of William G. Clark, infant deceased, and John W. Clark, as administrator of the estate of said infant, from judgments entered in favor of Clement J. Ferling for costs following the sustaining of demurrers to the plaintiffs' declarations. The questions raised in each appeal are identical; hence, the appeals may be considered as one.

The declaration, after reciting that the Maryland State Reformatory for Males is "under the personal direction of the defendant Clement J. Ferling, Superintendent" and that the deceased was committed by the court "to the custody, care and supervision" of the defendant goes on to recite:

> "[T]hat the said Clement J. Ferling had a duty to administer and manage the Maryland State Reformatory for Males so as to protect the life, health and personal welfare of all inmates of the reformatory, but violated the said duty of care in that he knew, or, by the exercise of reasonable care, would have known, that in a certain basement dormitory there were confined a number of vicious, brutal and homicidal inmates, that the said inmates were there confined in whole or part because the infant, William G. Clark, had given testimony against them * * *; that * * * the said inmates felt great hatred and animosity for the infant, William G. Clark, and were determined to secure revenge against him at the first opportunity; that such animosity and hatred were greatly aggravated by the inmates' confinement in an overcrowded and uncomfortable dormitory; that notwithstanding his knowledge of the facts aforesaid, the defendant, * * * without any warrant in reason or law, negligently confined, caused to be confined and suffered to be confined the said infant, * * * in the same dormitory with the aforesaid

> vicious, brutal and homicidal inmates without any means of protecting himself, without sufficient guards to protect the said infant, and without any means of escape by the said infant, and as a direct and proximate consequence of the gross negligence of the defendant, * * * the said vicious, brutal and homicidal inmates did set upon and brutally beat the said infant son of the plaintiffs, causing thereby his death * * *."

The case is brought under Code (1957), Article 67; consequently, in order for the plaintiffs to recover, the death averred must have been caused by the "wrongful act, neglect or default," such as would have entitled the deceased to have maintained an action and recover damages, had death not ensued. We must, therefore, determine whether the party injured would have had a right of action under the circumstances named in the declaration, to recover damages from the defendant for the injuries which he received.

It is contended for the defendant-appellee that the bringing of the action is merely an attempt by the appellants to lower the bar of governmental immunity which exists in favor of the State of Maryland and its agencies; that it has been held many times that suits, not properly maintainable against the state or its agencies, cannot be enforced circuitously against an executive officer who carries out governmental functions. The following cases are cited in support of this claim: *Stanley v. Mellor,* 168 Md. 465, 178 A. 106 (1935); *Williams v. Fitzhugh,* 147 Md. 384, 128 A. 137 (1925); *Fisher & Carozza Bros. Co. v. Mackall,* 138 Md. 586, 593, 114 A. 580 (1921); *State v. Rich,* 126 Md. 643, 644, 95 A. 956 (1915); *Weddle v. Board of School Com'rs,* 94 Md. 334, 51 A. 289 (1902). The appellants, however, argue that they are not suing the State or any of its agencies; that their suit is filed against the defendant as an individual for a negligent tort; and that he is amenable to such an action, although he was performing a public function at the time of its commission. Cf. 2 Shearman and Redfield, *Negligence,* (rev. ed.), Sec. 327; 2 Harper and James, *The Law of Torts,* Sec. 29.9 (1).

In the view that we take of the case, we do not reach this question; so we leave it open.

The position of Superintendent of the Maryland State Reformatory for Males is authorized and directed by Code (1957), Article 27, Section 675, the incumbent's duties are continuing in their nature and not occasional and call for the exercise of some portion of the sovereignty of the State; hence, there can be no doubt that the occupant thereof fills a public civil office and exercises important governmental functions in the performance of his duties. *Buchholtz v. Hill,* 178 Md. 280, 283, 13 A. 2d 348; *Pressman v. D'Alesandro,* 211 Md. 50, 55, 125 A. 2d 35. Nearly all of the textwriters and a great number of the cases attempt, with some variations, to classify the duties of public officers as they relate to tort liability or immunity into three general heads: political, judicial (including quasi-judicial) and ministerial. Harper and James, *op. cit.,* Secs. 29.8, 29.9, 29.10; 2 *Shearman and Redfield, op. cit.,* Secs. 323, *et seq.,* 2 *Cooley, Torts,* (4th ed.), Sec. 296. The first class is performed by the executive and legislative branches of the government and their subordinates, who owe duties to the public and the public alone. The second class is carried out by judicial and quasi-judicial officers. One textbook, *Shearman and Redfield, op. cit.,* Sec. 325, states that any officer, sworn to act faithfully according to the best of his ability and according as things shall appear to him, is, at least, a quasi-judicial officer. And cf. Harper and James, *op. cit.,* p. 1641.[1] The third class, ministerial, refers to duties in respect to which nothing is left to discretion as distinguished from those where the official has the freedom and authority to make decisions and choices.

It is obvious that the case at bar does not involve the first class of public duties mentioned in the last paragraph. We

---

1. A disposition in this connection to use "quasi-judicial" as synonymous with "discretionary," and both alike as antitheses of "ministerial" is noticeable in the decisions. Jennings, *Tort Liability of Administrative Officers,* 21 Minn. L. Rev. 263, 277. And the tendency has been to define the concept of "discretionary" or "quasi-judicial" action broadly in favor of immunity. Harper and James, *op. cit.,* Sec. 29.10 p. 1643.

think, however, the duties of the appellee herein of which complaint is made in the declaration fall within that class which has been designated as quasi-judicial, and, as stated above, involve the exercise of a considerable latitude of discretion. As the chief executive officer of the Maryland State Reformatory, he is the custodian of its inmates and the proper performance of the functions of his office, without detailing his duties, requires him to make many decisions that call for the exercise of judgment and discretion. When the complaint is for the failure to perform or properly to perform duties falling within this category, the text writers and cases, while recognizing that judicial officers are liable for the negligent performance of purely ministerial duties under some circumstances, seem to be in universal accord in holding that the public officer is immune from liability, at least, in the absence of a showing of malice. *Cocking v. Wade,* 87 Md. 529, 40 A. 104; *Shearman and Redfield, op. cit.,* Secs. 324, 325; *Cooley, op. cit.,* Secs. 299, 300; Harper and James, *op. cit.,* Sec. 29.10.

We think the relevant principles of law as enunciated in the *Cocking* case, just referred to, are controlling here. While the cases throughout the country are not in entire accord as to what duty the custodian of a prisoner in a penal institution owes to the prisoner and Maryland is probably in the minority, Anno. 14 A.L.R. 2d 353, the *Cocking* case was decided some sixty years ago, and, as the legislature has not seen fit to change the ruling made therein, we think it should be followed. There, a sheriff was sued for injuries received by one of his prisoners, which were alleged to be the result of the sheriff's negligence. A demurrer to the declaration was held to have been properly sustained; since there was no allegation in the *narr* of malice or evil purpose on the part of the sheriff. It was pointed out that his duty to keep the prisoner was not for the benefit of the prisoner; it was that he might be detained until discharged in due course of law. The Court cautioned that the sheriff must not avail himself of the opportunities his office affords him to indulge an evil spirit or wreak his malice on those over whom he has control; but if he performs his duties honestly, with a full purpose to per-

form his whole duty, even though he makes a mistake whereby a prisoner is injured, he cannot be held civilly responsible for damages to such prisoner.

We think the above case, as well as the other authorities cited, fully support the ruling of the trial court in sustaining the demurrer. It will be noted that the declaration here has no allegation of malice or evil design on the part of defendant, and further it contains no flat or direct statement that he *knew* there were "vicious, brutal and homicidal inmates" confined in the dormitory to which the deceased was assigned, that the deceased had testified against anyone causing his conviction, or that anyone had hatred or animosity toward the deceased. Therefore, all that we need to hold in order to decide this case, and all that we do hold, is that the defendant was a public officer; that his duties in safely confining the deceased were public in character and quasi-judicial in nature, in that they involved the exercise of discretion; and that he is not liable for injuries inflicted by one of his prisoners upon another, at least, in the absence of an allegation of malice or evil purpose on his part, that he knew of some unusual danger to the party injured, or that he participated in inflicting the injury. Cf. *St. Julian v. State,* 98 So. 2d 284 (La., 1957).

*Judgments affirmed, with costs.*