KENNETH JAMES ET UX. v. PRINCE GEORGE'S
COUNTY, MARYLAND

\* \* \*

DOUGLAS ARTHUR DAWSON v. PRINCE GEORGE'S
COUNTY, MARYLAND ET AL.

[No. 158, September Term, 1979.]

*Decided September 3, 1980.*

*Motion for reconsideration filed October 2, 1980; denied October 10, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*James W. Taglieri,* with whom was *Robert Cadeaux* on the brief, for Kenneth James et ux. *John J. Pyne,* with whom was *William P. Dale* on the brief, for Douglas Arthur Dawson.

*David S. Bliden, Associate County Attorney,* with whom were *Robert B. Ostrom, County Attorney,* and *Michael O. Connaughton, Deputy County Attorney,* on the brief, for appellee Prince George's County. *Karl G. Feissner,* with whom were *Eric S. Slatkin* and *Feissner & Beckman* on the brief, for appellee West Lanham Volunteer Fire Department, Inc.

DIGGES, J., delivered the opinion of the Court. MURPHY, C. J., concurs in part and dissents in part, and filed an opinion concurring in part and dissenting in part at page 337 *infra.*

These two actions, which have been consolidated and are here on certiorari before their consideration by the Court of Special Appeals, present primarily for decision the same question — the general extent to which a charter county may, and Prince George's County did as it affects the present cases, waive governmental immunity so as to make it liable for damages caused by the negligent acts of its officials or agents. Since we conclude both that there are situations, and they exist here, which can result in liability being imposed

upon counties positioned as Prince George's is in the present cases, we will reverse the judgments entered by the circuit court of that county dismissing, on immunity grounds, appellants' causes of action prior to trial.

The factual background of each of these cases comes basically from the appellants' declarations filed in these actions and may be briefly related. In the first case, appellant Douglas Arthur Dawson seeks damages of $2,000,000 from appellees, Prince George's County and the Volunteer Fire Department of West Lanham Hills, Maryland, Inc., for personal injuries sustained in March 1976 when a fire truck, operated by a member of the volunteer fire company in response to a call for assistance, was alleged to have been negligently driven into the intersection of Good Luck Road and Cipriano Road in Prince George's County, where it struck Dawson's automobile and propelled it across the intersection into an electric pole. The second case before us also involves a motor vehicle accident — a collision between an automobile owned and operated by appellant Kenneth James and an ambulance owned by Prince George's County. The declaration which was filed by appellant and his wife Elizabeth (also an appellant before this Court) only against Prince George's County, asserts that, in November 1978, a county ambulance was negligently driven by an agent or employee of the county into the intersection of Marlboro Pike and Brooks Drive in Suitland, Maryland, where it collided with the James vehicle.[1] As a result of this allegedly negligent act, Mr. James individually claimed personal and property damages of $1,000,000, while he and his wife jointly requested damages of $25,000 for loss of consortium.

Prior to filing pleas, each appellee asserted, by way of a Motion Raising Preliminary Objection, that it was immune from liability for the type of tortious conduct alleged by Dawson and James. The volunteer fire company, on the one hand, argued that it was entitled to charitable immunity

---

1. The accident report, which was filed in response to the county's demand for particulars and is part of appellants' pleading in this case, Md. Rule 346, indicates that the ambulance was on an emergency call, was operating its emergency lights and siren at the time of the collision, and had proceeded into the intersection although the traffic signal for it was red.

due to its nonprofit, charitable status. The county, on the other, contended that, even though the Prince George's County Charter waived the governmental immunity which it had previously enjoyed, it nonetheless was still not liable for any damages caused by the negligent acts of its agents since these individuals were "public officials" cloaked with a qualified personal immunity for their conduct. This was so, asserted the county, because under the doctrine of *respondeat superior,* upon which each suit was based,[2] it, as principal, may not be held derivatively liable for the damages the plaintiffs incurred, when the actual tortfeasor would not also be responsible. By separate rulings, the Circuit Court for Prince George's County agreed with the position of each appellee, and accordingly, dismissed the damage actions of both Dawson and James. This appeal then followed; and, as the county's claim of nonliability is central to each case, we shall first address that issue.

The proper place to begin our analysis of the county's claim of immunity is with the provision of the county's own organic law — section 1013 of the Prince George's County Charter — which, as this Court recently observed, expresses the county's voluntary determination "to waive the immunity it would otherwise enjoy at common law for its acts . . . ." *Bradshaw v. Prince George's County,* 284 Md. 294, 301, 396 A.2d 255, 259-60 (1979). Section 1013 was first enacted as part of the original charter, effective February 1971, by the people of Prince George's County pursuant to Article XI-A of the Maryland Constitution.[3] At the time of

2. We should note for the reader that all nonprofit incorporated volunteer fire companies are, by county code, "declared to be an instrumentality of Prince George's County . . . ." Prince George's County Code § 11-207 (a) (1975). We recently held that this provision, in conjunction with sections 11-125 and 11-126 of the county code establishing the office and powers of fire chief, place volunteer firemen under the control and direction of the county when going to or from, or when fighting fires. Prince George's Co. v. Chillum-Adelphi, 275 Md. 374, 383-84, 340 A.2d 265, 271-72 (1975). It is this control which forms the link for holding the county liable, on *respondeat superior* grounds, for the actions of volunteer firefighters.

3. A charter county's power and authority to govern is limited to that granted directly by Article XI-A, § 1 of the Maryland Constitution, or through the express powers given such counties by the General Assembly pursuant to § 2 of that same Article. *See* Ritchmount Partnership v. Board, 283 Md. 48, 58-59, 388 A.2d 523, 530-31 (1978).

the accident involving appellant Dawson (March 1976), the provision, as it had from its inception, read:

## Section 1013. GOVERNMENTAL LIABILITY.

The County may be sued in actions sounding in tort in the same manner and to the same extent that any private person may be sued. The County shall carry liability insurance with adequate limits to compensate for injury to persons or damage to property resulting from negligence and other wrongdoings of its officers, agents, and employees. Nothing herein shall preclude the County from meeting the requirements of this section by a funded self-insurance program.[4]

Section 1013 was amended, however, in November 1976 in order to have it conform to an addition, made by the General Assembly earlier in that year, to the Express Powers Act. Md. Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.), Art. 25A, § 5 (CC).[5] The section now reads:

---

4. Without addressing the constitutionality of section 1013, this Court did uphold the effectiveness of it in Bradshaw v. Prince George's County, 284 Md. 294, 297-99, 396 A.2d 255, 258 (1979), as being within the broad grant of power to legislate for the general welfare contained in the Express Powers Act, Md. Code (1957, 1973 Repl. Vol.), Art. 25A, § 5 (S); likewise, no one questions the constitutionality of the provision here and we do not consider it.

5. This provision of the Express Powers Act provides:

To provide by ordinance or inclusion in the county charter for the waiver of sovereign immunity so that the county may be sued in tort actions in the same manner and to the same extent that any private person may be sued. Any chartered county enacting legislation or otherwise waiving sovereign immunity under this subsection shall carry comprehensive liability insurance to protect itself, its agents and its employees. The purchase of this insurance shall be considered as for a public purpose and as a valid public expense. The liability of any county under this subsection may not be greater than $250,000 or the amount of its insurance coverage, whichever is greater, per individual per occurrence. A county which has adopted legislation or otherwise availed itself of the powers contained in this subsection may raise the defense of sovereign immunity to any amount in excess of the limit of its insurance coverage. In any case, the several counties or any county availing itself of the privileges of this subsection may not raise the defense of sovereign immunity in any claim of less than $250,000 or the

Section 1013. GOVERNMENTAL LIABILITY.

The County may be sued in actions sounding in tort by actions filed in the courts of the State of Maryland, or in the United States District Court for the District of Maryland, with a maximum liability of Two-Hundred Fifty Thousand Dollars ($250,000) per individual, per occurrence, to the extent of its insurance coverage, whichever may be greater. The County shall carry liability insurance to protect itself, its officers, agents, and employees. Nothing herein shall preclude the County from meeting the requirements of this section by a funded self-insurance program, and nothing herein shall be deemed to be a waiver of any charitable, governmental, or sovereign immunity which any officer, agent, or employee shall otherwise have, by reason of any Statute of the United States of America, public general law of the State of Maryland, or common law as determined by the Courts of the State of Maryland.[6]

It is clear that the amended Prince George's County Charter provision pertains to the James' cause of action since the alleged negligent conduct occurred after the effective date of that change; whether the monetary limitation contained in that charter modification applies to appellant Dawson's already accrued cause of action is a question which is not now before us on this appeal.[7] This results from the fact that both the amendment and its predecessor provision have the same effect on the issue presently before us, *i.e.,* they both purport to waive the county's own governmental immunity.

---

amount of its insurance coverage, whichever is greater. [Md. Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.), Art. 25A, § 5 (CC).]

This initial explicit grant of power to charter counties to waive, if they so elect, governmental immunity became effective on July 1, 1976. In these cases, since no one questions it, we are not called upon to express any views concerning the validity of any portion of this legislative enactment.

6. Also we are not called upon here to consider the extent, if at all, that a charter county may elect to waive governmental immunity in a more restrictive manner than that authorized by the Express Powers Act.

7. The question of the monetary limitation's application to appellant Dawson's already accrued cause of action will not arise unless the damages eventually awarded exceed that restriction, and therefore we do not now consider it.

The scope of section 1013's initial waiver of immunity was first examined by this Court in *Bradshaw v. Prince George's County, supra.* There we held that: when the county consented, in its original charter, to be sued "in the same manner and to the same extent [as] any private person," it accepted responsibility for those torts for which any private person could be held liable, either directly or derivatively. *Id.* at 301, 396 A.2d at 259-60. Moreover, we concluded in *Bradshaw* that the people of Prince George's County did not intend, by the enactment of section 1013, to eliminate the individual immunity which is available in certain instances to this county's public officials.[8] *Id.* at 303-04, 396 A.2d at 261. Such intent is now expressly stated in the amended charter: "nothing herein shall be deemed to be a waiver of any charitable, governmental, or sovereign immunity which any officer, agent, or employee shall otherwise have . . . ." Having further observed that private persons in this State could not be held liable for the torts of an agent, who by reason of his relationship to the tort victim (*i.e.,* spouse, parent or child) was personally immune, this Court reasoned in *Bradshaw* that a similar principle should prevent the county from being held liable for the actions of its agents who have public-official immunity. *Id.* at 305, 396 A.2d at 262.

Accepting the continuing integrity of our decision in *Bradshaw* — that the county remains without liability if the tortious conduct on which the suit is based is the act of an individual who is personally immune — the central issue before this Court in the present case now is whether the drivers of the emergency vehicles were "public officials"; and if so, whether official immunity would protect these agents from liability for their negligent acts. Relying exclusively on this Court's decision in *Bradshaw* that a police officer is a "public official" who is immune from liability for nonmalicious acts committed during the performance of his duties, the circuit court determined that the drivers of all authorized emergency vehicles are, as are police, engaged in

---

8. We do not here consider whether the county possesses authority to eliminate the immunity enjoyed by its public officials.

the exercise of discretion in responding to a call. Thus, it reasoned that they are public officials and immune. Specifically, the trial court pointed to the fact that in response to an alarm, the driver had to decide whether to use his emergency signals and sirens, the route to be taken, how fast to proceed through traffic and which rules of the road to disregard. While we agree that the driver of an emergency vehicle must make many decisions in the operation of that conveyance, we cannot agree that he is thereby always immune (even assuming he is a public official) for negligently carrying out the driving decisions made. We explain.

Before a governmental representative in this State is relieved of liability for his negligent acts, it must be determined that the following independent factors *simultaneously* exist: (1) the individual actor, whose alleged negligent conduct is at issue, is a *public official* rather than a mere *government employee or agent;* and (2) his tortious conduct occurred while he was performing *discretionary,* as opposed to *ministerial,* acts in furtherance of his official duties.[9] *E.g., Duncan v. Koustenis,* 260 Md. 98, 104, 271 A.2d 547, 550 (1970); *State, Use, Clark v. Ferling,* 220 Md. 109, 113-14, 151 A.2d 137, 139-40 (1959); *Cocking v. Wade,* 87 Md. 529, 541, 40 A. 104, 106 (1898); *Macy v. Heverin,* 44 Md. App. 358, 361, 408 A.2d 1067, 1069 (1979); *accord, Schoonfield v. Mayor & City Council of Baltimore,* 399 F. Supp. 1068, 1088 (D. Md. 1975), *aff'd,* 544 F.2d 515 (4th Cir. 1976); 2 F. Harper & F. James, *The Law of Torts* § 29.10, at 1638-39 (1956); W. Prosser, *Handbook of the Law of Torts* § 132, at 988-90 (4th ed. 1971); *Restatement (Second) of Torts* § 895D (1979); Bermann, *Integrating Governmental and Officer Tort Liability,* 77 Col. L. Rev. 1175, 1178-79 (1977). Once it is established that the individual is a public official *and* the tort was committed while performing a duty which involves the exercise of discretion, a qualified immunity attaches; namely, in the absence of malice, the

**9.** To the extent that Carder v. Steiner, 225 Md. 271, 170 A.2d 220 (1961) and similar cases indicate that the existence of the first factor alone is sufficient to create public-official immunity, they are overruled.

individual involved is free from liability. *See, e.g., Bradshaw v. Prince George's County, supra,* 284 Md. at 302-04, 396 A.2d at 260-61; *Robinson v. Bd. of County Comm'rs,* 262 Md. 342, 346-47, 278 A.2d 71, 74 (1971). The rationale underlying this grant of immunity "is that a public purpose is served by protecting officials when they act in an exercise of their discretion." *Bradshaw v. Prince George's County, supra,* 284 Md. at 304, 396 A.2d at 261.

The first required factor for establishing immunity — whether an individual is a public official — has been considered often by this Court. Our most recent decision dealing with the concept of a "public official" in this context is *Duncan v. Koustenis, supra,* where we set forth the following principal guidelines to be used in making this determination:

> (i) The position was created by law and involves continuing and not occasional duties.
>
> (ii) The holder performs an important public duty.
>
> (iii) The position calls for the exercise of some portion of the sovereign power of the State.
>
> (iv) The position has a definite term for which a commission is issued and a bond and an oath are required.

*Id.* at 105, 271 A.2d at 550. *Accord, e.g., Board v. Attorney General,* 246 Md. 417, 439, 229 A.2d 388, 400 (1967); *Moser v. Howard County Board,* 235 Md. 279, 281, 201 A.2d 365, 366 (1964); *Gary v. Board of Trustees,* 223 Md. 446, 449, 165 A.2d 475, 477-78 (1960). These guidelines are not conclusive, and the emphasis which may be placed on each varies depending upon the circumstances present in each case. *Duncan v. Koustenis, supra,* 260 Md. at 106, 271 A.2d at 551. Moreover, there are at least two well-recognized exceptions to the requirement that the above four factors be present, as explained by Judge Barnes for this Court in *Duncan:*

> [A]n individual [who] fails to meet most of the above tests, and yet is nevertheless considered to be

a public official, [is one] who exercise[s] "a *large portion* of the sovereign power of government" . . . , *Howard County Metropolitan Commission v. Westphal,* 232 Md. 334, 340, 193 A.2d 56, 59 (1963), [as well as one] who can be called on to exercise police powers as [a] conservator of the peace. [*Duncan v. Koustenis, supra,* 260 Md. at 106, 271 A.2d at 551.]

Prince George's County goes to great lengths in its brief in this Court to demonstrate that the drivers of the fire truck and the ambulance are both "public officials" under the rules we have just outlined. While there are no Maryland decisions directly on point, there is, by analogy to the cases of this Court holding police officers to be public officials, *see Bradshaw v. Prince George's County, supra,* 284 Md. at 302-03, 396 A.2d at 260-61 and cases cited therein, some merit to the county's argument as to the present drivers' status, particularly with regard to the firefighter, *see Mercadante v. City of Paterson,* 111 N.J. Super. 35, 266 A.2d 611 (1970), *aff'd,* 58 N.J. 112, 275 A.2d 440 (1971) (firefighter is a public official); *Johnston v. City of Grants Pass,* 120 Ore. 364, 251 P. 713 (1926) (same); *Benefiel v. Eagle Brass Foundry,* 154 Wash. 330, 282 P. 213 (1929) (same); however, we find that we need not decide whether such individuals are "public officials" in this State, for even if they are, the drivers fail, in our view, to meet the second requirement necessary to establish public-official immunity — that the alleged negligent act (here, the ordinary and routine driving of an emergency vehicle) is one which involves discretion as to how the police power of the sovereign should be exercised.

As we previously indicated, the protection afforded "public officials" by this State's immunity doctrine depends upon the nature of the conduct of the agent being questioned. The distinction which this Court has developed in the past for determining whether a "public official" is immune from liability is whether this individual, at the time the complained of act occurred, was performing a discretionary or ministerial task. If the former, then public-official immunity shields him from liability, but if the latter, then

it does not. *See, e.g., Robinson v. Bd. of County Comm'rs, supra,* 262 Md. at 346-47, 278 A.2d at 74; *Duncan v. Koustenis, supra,* 260 Md. at 104, 271 A.2d at 550; *Cocking v. Wade, supra,* 87 Md. at 541, 40 A. at 106. A similar distinction has developed in the majority of our sister states. *See, e.g.,* 2 F. Harper & F. James, *supra,* § 29.10, at nn. 4-7 and accompanying text (citing numerous cases); W. Prosser, *supra,* § 132, at 988-89 (majority rule); C. Rhyne, W. Rhyne & S. Elmendorf, *Tort Liability and Immunity of Municipal Officials* 15-25 (1976). While this dividing line between immunity and liability is one of longstanding in Maryland, we have only rarely explained the difference between discretionary and ministerial acts. In *State, Use, Clark v. Ferling,* 220 Md. 109, 151 A.2d 137 (1959), Judge Prescott, however, did note for this Court that "ministerial refers to duties in respect to which nothing is left to discretion as distinguished from those where the official has the freedom and authority to make decisions and choices." *Id.* at 113, 151 A.2d at 139. And in *Schneider v. Hawkins,* 179 Md. 21, 25, 16 A.2d 861, 864 (1940), we explained:

> The term "discretion" denotes freedom to act according to one's judgment in the absence of a hard and fast rule. When applied to public officials, "discretion" is the power conferred upon them by law to act officially under certain circumstances according to the dictates of their own judgment and conscience, and uncontrolled by the judgment or conscience of others.

The ministerial-discretionary distinction was aptly summarized by the California Supreme Court over eighty years ago:

> Where [a public officer's] duty is absolute, certain, and imperative, involving merely the execution of a set task — in other words, is simply ministerial — he is liable in damages to anyone specially injured either by his omitting to perform the task, or by performing it negligently or unskillfully. On the other hand, where his powers are discretionary, to

be exerted or withheld according to his own judg-
ment as to what is necessary and proper, he is not
liable to any private persons for a neglect to exer-
cise those powers, nor for the consequences of a
lawful exercise of them, where no corruption or
malice can be imputed, and he keeps within the
scope of his authority. [*Doeg v. Cook,* 126 Cal. 213,
58 P. 707, 708 (1899).]

See also *Restatement (Second) of Torts* § 895D, comment f
(1979) (factors in determining whether function is
discretionary include, among others, nature of function,
importance to public, planning v. operational, essentially
political decision); C. Rhyne, *et al., supra,* at 16 (discretionary
function — quasi-judicial in nature in that it requires
personal deliberation and judgment).

When attempting to classify the particular actions of a
public official, a court should be careful not to let the mere
fact that decisions are made in performing the questioned
task be determinative of whether liability attaches to the
conduct, for "[i]n a strict sense, every action of a government
employee, except perhaps a conditioned reflex action,
involves the use of some degree of discretion." *Swanson v.
United States,* 229 F. Supp. 217, 219-20 (N.D. Cal. 1964). Or
as has been otherwise expressed: "it would be difficult to
conceive of any official act, no matter how directly
ministerial, that did not admit of some discretion in the
manner of its performance, even if it involved only the
driving of a nail." *Johnson v. State,* 69 Cal. 2d 782, 447 P.2d
352, 357, 73 Cal. Rptr. 240 (1968) (en banc). Thus, an act
falls within the discretionary function of a public official if
the decision which involves an exercise of his personal judg-
ment also includes, to more than a minor degree, the manner
in which the police power of the State should be utilized. The
case now before us presents an excellent example of what we
mean. The driving of an emergency vehicle such as an
ambulance or fire truck requires, as does the driving of any
automobile, that a number of decisions be made with regard
to the manner of operation. Such decisions, however, involve
to minimal degree, if at all, the exercise of discretion with

regard to the State's sovereignty. While State law grants certain privileges to the operators of these vehicles when using audible and visual signals, Md. Code (1977), Transportation Art., § 21-106(b),[10] it "does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons." *Id.* at § 21-106 (d). In light of this section, there is minimal discretion on the part of a fire truck driver as to how he drives; but even if this statute did not exist, we would nevertheless hold that ordinarily the operation of a vehicle by any one, including a "public official," is a mere ministerial act. *See, e.g., Friday v. United States,* 239 F.2d 701, 703 (9th Cir. 1957) (government truck); *Florio v. Mayor and Aldermen of Jersey City,* 101 N.J.L. 535, 129 A. 470, 471-72 (1925) (fire truck); *Hansley v. Tilton,* 234 N.C. 3, 65 S.E.2d 300, 303 (1951) (school bus); *Wynn v. Gandy,* 170 Va. 590, 197 S.E. 527, 529 (1938) (school bus). *Cf.* Md. Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.), Art. 23A, § 1B (b) (municipal official not immune for torts arising out of operation of automobile). In contrast, if what we had before us was a suit arising out of the discretionary decision of a fire chief (although generally authorized) to destroy a specific non-burning building in order to contain a fire in another nearby building, we would have no doubt that this action would isolate this public official from liability since it involves an exercise of his personal judgment and expertise in furtherance of the State's police power.

In sum, we hold that the normal operation of a vehicle, including those on an emergency mission, is not ordinarily a discretionary act for which immunity will shield the driver from liability for negligence. Therefore, since the individuals here possess no immunity, neither, with its waiver, does

---

**10.** Section 21-106 (b) of the Transportation Article provides:

(b) *Enumeration of privileges.* — Under the circumstances stated in subsection (a) of this section, the driver of an emergency vehicle may:

(1) Park or stand without regard to the other provisions of this title;

(2) Pass a red or stop signal, a stop sign, or a yield sign, but only after slowing down as necessary for safety;

(3) Exceed any maximum speed limit, but only so long as the driver does not endanger life or property; and

(4) Disregard any traffic control device or regulation governing direction of movement or turning in a specified direction.

Prince George's County; and if the operation of these vehicles in furtherance of the county's business was negligent, then Prince George's County is liable for any damages caused by such conduct. *Bradshaw v. Prince George's County, supra.*

In addition to the conclusion expressed above, there is, because we now entertain a different view with respect to some of the issues addressed in *Bradshaw,* another basis for holding Prince George's County liable for the damages, if any, caused by the negligent conduct of its agents. As discussed previously in this opinion, the people of Prince George's County waived, through their charter, the county's own governmental immunity by consenting to suits "in actions sounding in tort in the same manner and to the same extent that any private person may be sued," which we construed in *Bradshaw* as limiting the county's liability to only those torts committed by its non-immune agents. Upon further reflection, however, we now conclude that such a construction of this language was too narrow in scope, and that the terminology chosen reflects a voluntary election by the people of the county to provide for liability on the part of their government notwithstanding the status or personal amenability to suit of the individual agent who commits the tort. We explain.

When waiving governmental immunity for tortious conduct, Prince George's County, by assenting to suits "in the same manner and to the same extent" as that of "any private person," employed words which, because of their general use in nearly all of the immunity waiver statutes throughout this country, as well as their interpretation, may now be considered, when used together in this context, to constitute a phrase of art.[11] *See, e.g.,* 28 U.S.C. § 2674

---

11. Although the modified waiver provision of the Prince George's County Charter does not contain these words of art, the section of the Express Powers Act permitting charter counties to waive governmental immunity does adopt this same phraseology. *See* Md. Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.), Art. 25A, § 5 (CC) (set out in full n. 5, *supra*.) Since Section 1013, as amended, of the charter was enacted pursuant to section 5 (CC) of Article 25A, our construction of the phrase "in the same manner and to the same extent [as] any private person" is applicable to both

(1970); Colo. Rev. Stat. § 24-10-106 (1973); Fla. Stat. Ann. § 768.28(5) (West Cum. Supp. 1980); Haw. Rev. Stat. § 662-2 (1976 Repl. Vol.); Iowa Code Ann. § 25A.2(5)(a) (West 1978); Mont. Rev. Codes Ann. § 83-701 (1976 Repl. Vol.); Neb. Rev. Stat. § 81-8,210(4) (1971 Repl. Vol.); Nev. Rev. Stat. § 41.031 (1973); N.Y.Ct.Cl. Act. § 8; N.C. Gen. Stat. § 143-291 (1978 Repl. Vol., 1979 Supp.); Ohio Rev. Code Ann. § 2743.02(A) (Page 1953, 1979 Supp.); R.I. Gen. Laws § 9-31-1 (1956, 1979 Supp.); Tenn. Code Ann. § 23-3302(4) (1956, 1978 Supp.); Tex. Civ. Code Ann. tit. 6252-19, § 3 (Vernon 1970, 1979 Supp.); Wash. Rev. Code Ann. § 4.92.090 (1962, 1980 Supp.).[12] The construction given to this language in the courts of our sister jurisdictions, which, unless contrary to sound logic, are persuasive authority for the intended meaning of this phrase, see *Unsatisfied C. & J. Fund v. Hamilton,* 256 Md. 56, 58-62, 259 A.2d 303, 305-07 (1969); *St. Joseph Hospital v. Quinn,* 241 Md. 371, 377, 216 A.2d 732, 735-36 (1966), is that the applicable governmental entity is liable for conduct "which would be actionable if . . . done by a *private person in a private setting." Edgar v. State,* 92 Wash. 2d 217, 595 P.2d 534, 539 (1979) (en banc) (emphasis added); *accord, e.g., Rayonier Incorporated v. United States,* 352 U.S. 315, 318-19, 77 S. Ct. 374, 1 L. Ed. 2d 354 (1957); *Indian Towing Company v. United States,* 350 U.S. 61, 64-65, 76 S. Ct. 122, 100 L. Ed. 48 (1955); *Commercial Carrier Corp. v. Indian River Cty,* 371 So. 2d 1010, 1017 (Fla. 1979); *Rogers v. State,* 51 Haw. 293, 459 P.2d 378, 381 (1969); *Upchurch v. State,* 51 Haw. 150, 454 P.2d 112, 114 (1969); *State v. District Ct. of Fourteenth Judicial Dist.,* 572 P.2d 201, 203-04 (Mont. 1977); *Jones v. State,* 33 N.Y.2d 275, 307 N.E.2d 236, 237-38, 352 N.Y.S.2d 169 (1973); *Bernardine v. City of New York,*

---

waivers by the county.

We also note that the waiver authorization provision of the Express Powers Act was enacted by the General Assembly prior to our decision in *Bradshaw,* and thus, there is no question of the legislature adopting our earlier construction of the language found in the Prince George's County Charter when it used similar terminology in Article 25A of the Code.

12. Professor Davis notes in his treatise on administrative law that, as of 1976, thirty-four states have enacted statutes which at least to some extent waive unconditionally governmental immunity. K. Davis, *Administrative Law of the Seventies* § 25.00-1 (1976).

294 N.Y. 361, 62 N.E.2d 604, 605 (1945); *Macfarlane v. North Carolina Wildlife R. Com'n,* 244 N.C. 385, 93 S.E.2d 557, 559 (1956); *Harris v. State,* 48 Ohio Misc. 27, 358 N.E.2d 639, 641 (Ct. Cl. 1976). In other words, the government, under such statutes, is answerable equally with individuals and private corporations for the wrongs of its officers and employees, and thus, a court should not, as we did in *Bradshaw,* treat Prince George's County as a private entity with public-official agents, but rather as a private entity utilizing private persons as its agents.[13] *See Bernardine v. City of New York, supra,* 62 N.E.2d at 605. Consequently, if the complained of conduct is performed by a county representative while acting within the scope of his employment but in a negligent manner, Prince George's County will be subject to suit for the resulting damage, without regard to the fact that the agent has public-official immunity.

Even without this determination — that, for purposes of county liability, the county's agents are to be treated as though they were private persons — we would still hold that Prince George's County under the terms of each of its successive waiver provisions, is responsible for the torts of

---

13. This does not mean, however, that a court, when determining whether an act of a governmental agent is negligent, should ignore the status of the individual involved and the situation which faced him when he engaged in the complained of conduct. For example, in *Bradshaw, supra,* the negligence alleged was the failure of county police officers to properly care for a child which they observed hanging from a trash dumpster. Concluding, following tests, that the infant was dead, the officers, in order to preserve as an aid to their further investigation of what they deemed to be the scene of a crime, did not remove the child and attempt to revive him. 284 Md. at 296, 396 A.2d at 257. Since negligence is the doing of (or failure to do) some act, which a reasonably prudent person would do (or not do) in the same, or under like, circumstances, *e.g.,* Aleshire v. State, 225 Md. 355, 366, 170 A.2d 758, 764 (1961); Minch v. Hilkowitz, 162 Md. 649, 651, 161 A. 164, 165 (1932), the officers' acts would only have been negligent if a reasonably prudent person with similar training, and under similar circumstances, would not have acted as the policemen did there. *See* 2 F. Harper & F. James, *The Law of Torts* § 16.6, at 917 (1956) (the standard of care for someone with special skills "require[es] the actor to exercise the degree of skill which the general class of persons engaged in that line of activity have"). It is because of what we have just said that, although overruling in the present case some of the specific analysis contained in our opinion in *Bradshaw,* we do not mean to imply that we would have necessarily reached a different result in that case.

its agents who have public-official immunity because we conclude that the doctrine of *respondeat superior* should not, except possibly in the limited circumstances to be mentioned presently, permit a principal to assert the immunity of the agent in a suit founded on the agents' conduct. *Respondeat superior,* or vicarious liability as it is also known, is a principle of tort law which "means that, by reason of some relationship existing between A and B, the negligence of A is to be charged against B, although B has played no part in it, has done nothing whatever to aid or encourage it, or indeed has done all that he possibly can to prevent it." *W. Prosser, supra,* § 69, at 458. The doctrine most often arises in the context of suits against masters for the torts of their servants committed in the course of their employment. As a general rule, followed by a vast majority of American courts, the master remains liable for the servant's conduct even though the servant is himself not liable because of a personal immunity. *See* 2 F. Harper & F. James, *supra,* § 26.17, at 1427 n. 6 (citing cases); Annot., 1 A.L.R.3d 677, 689-99 (1965 & 1979 Supp.) (citing cases from 25 American jurisdictions plus England & Canada); *Restatement (Second) of Agency* § 217 (1958); W. Seavy, *Handbook of the Law of Agency* § 93, at 167 (1964). However, there is an exception to this view, recognized in Maryland and a handful of other jurisdictions, which permits an employer to assert the immunity of the employee in a suit by a member of the employee's family. *See Riegger v. Brewing Company,* 178 Md. 518, 523, 16 A.2d 99, 101 (1940) (suit by wife against husband's employer); Annot., 1 A.L.R.3d, *supra,* at 685-86 (citing cases from six jurisdictions).[14] The immunity granted

---

**14.** Our research indicates that after Maryland joined the small minority of states that adopted this principle of *respondeat superior* in Riegger v. Brewing Company, 178 Md. 518, 16 A.2d 99 (1940), no other jurisdiction, except for the District of Columbia, *see* Baker v. Gaffney, 141 F. Supp. 602 (D.D.C. 1956) (following Maryland law as its own), has likewise adopted it. In fact, a note in the Maryland Law Review concerning the *Riegger* decision points out that when this Court decided that case, the trend was clearly opposite the view there taken. 6 Md. L. Rev. 173, 175 n. 13 (1942). While Professor Prosser characterizes the Maryland view of vicarious liability in this area of inter-family immunity as "obsolete" in that it confuses immunity from suit with lack of responsibility, W. Prosser, *Handbook of the Law of Torts* § 122, at 869 (4th ed. 1971), we are not called upon here to decide whether to retain the doctrine as it pertains to inter-family immunity.

to family members was created to discourage the destruction of family harmony, *see Riegger v. Brewing Company, supra,* 178 Md. at 522, 16 A.2d at 101, and thus, to permit a minor child, for example, to sue a parent's employer for injuries sustained as a result of the parent's negligence while acting in the scope of his employment, with the accompanying ability of the employer to seek reimbursement from the erring agent, would allow the child to accomplish indirectly what he could not do directly. *See Sherby v. Weather Brothers Transfer Company,* 421 F.2d 1243, 1246 (4th Cir. 1970) (applying Maryland law); *cf. Riegger v. Brewing Company, supra* (suit by wife). However, the promotion of such a purpose is not present when a personal immunity such as public-official immunity is involved. Unlike inter-family immunity, official immunity does not depend on the special relationship between tortfeasor and victim. While a suit for indemnification could be maintained by a principal against his negligent agent for damages paid to the agent's child (thus, circumventing the immunity), a similar suit could not be brought by the government against its public-official agent because his official immunity would still bar the suit. Therefore, there is no reason to extend to the governmental-official immunity area of the law, as we did in *Bradshaw,* the inter-family immunity exception principle to the *respondeat superior* rule, and we now decline to follow this aspect of that decision.

In so ruling, we note that nearly all of the courts, both state and federal, considering the question, have adopted the view we announce here — that the government, when it has waived immunity in a fashion similar to Prince George's County in section 1013, is liable for torts committed by its officers even though those officers themselves are not liable because of public-official immunity. *See, e.g., Carter v. Carlson,* 447 F.2d 358, 367 (D.C. Cir. 1971), *rev'd on other grounds sub nom. District of Columbia v. Carter,* 409 U.S. 418 (1973); *United States v. Trubow,* 214 F.2d 192, 195-96 (9th Cir. 1954); *Norton v. Turner,* 427 F. Supp. 138, 146-47 (E.D. Va. 1977), *rev'd sub nom. Norton v. United States,* 581 F.2d 390 (4th Cir.), *cert. denied,* 439 U.S. 1003 (1978); *Downs*

v. United States, 382 F. Supp. 713, 750 (M.D. Tenn. 1974), aff'd on this issue, 522 F.2d 990 (6th Cir. 1975); Bridges v. Housing Auth., 375 P.2d 696, 702-03 (Alaska 1962); Patterson v. City of Phoenix, 103 Ariz. 63, 436 P.2d 613, 617 (1968); Krause v. State, 28 Ohio App. 2d 1, 274 N.E.2d 321, 326 (1971), rev'd on other grounds, 31 Ohio St. 2d 132, 285 N.E.2d 736, appeal dismissed, 409 U.S. 1052 (1972); Muntan v. City of Monongahela, 45 Pa. Commw. Ct. 23, 406 A.2d 811, 813-14 (1979); Wicks v. Milzoco Builders, Inc., 25 Pa. Commw. Ct. 340, 360 A.2d 250, 253 (1976). See also Bermann, Integrating Governmental and Officer Tort Liability, 77 Col. L. Rev. 1175, 1186-87 (1977); Restatement (Second) of Torts § 895D, comment j (1979). Particularly instructive, and in this regard typical, is the reasoning expressed in the following passage from Downs v. United States, supra:

> The Government contends that the FBI agents involved in this case would be entitled to officer immunity, and that consequently the United States is likewise immune under the Tort Claims Act's doctrine of respondeat superior. In the posture of this case, it is unnecessary to decide the extent to which FBI agents perform discretionary activity and are thus protected by immunity, for even if they would be, it does not follow that the United States is also immune under the Tort Claims Act. In fact, the court feels that a desirable relationship of sovereign and officer immunity compels an opposite result . . . . Initially, the application of immunity sought by the Government would largely emasculate the purpose of the Tort Claims Act; it would be inconsistent with the Act's waiver of immunity for the Government to reclaim immunity merely because no action could be brought against the employee whose act or omission gave rise to a damage claim. . . . Furthermore, the fundamental reason for the two immunities differ; for the officer it is to encourage unrestrained execution of responsibility, while for the sovereign it is to

prevent judicial scrutiny of basic policies formulated by coordinate branches of government. To insulate the Government [(against its wishes)] from liability for the inevitable mishaps which will occur when its employees perform their functions without fear of liability not only is unjust, but also serves no purpose for which sovereign immunity need exist. Further, given the general trend favoring growth of officer immunity, a rule which makes the United States immune as well would, in time, largely emasculate the remedial purposes of the Tort Claims Act. [382 F. Supp. at 749-50.]

While ordinarily enactments in derogation of the common law are to be strictly construed, *e.g., Bradshaw v. Prince George's County, supra,* 284 Md. at 302, 396 A.2d at 260 (assuming this principle is applicable to organic law such as a charter provision), we would be remiss if we ignored the remedial nature of section 1013 of the Prince George's County Charter, as well as the provisions of the Express Powers Act, and the rule of statutory construction that such statutes are to be liberally construed in order to advance the remedy and obviate the mischief which these laws were designed to redress. *See, e.g., Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 494, 331 A.2d 55, 61 (1975); *State v. Barnes,* 273 Md. 195, 208, 328 A.2d 737, 745 (1974). In balancing these competing considerations, we take comfort in the words of Mr. Justice Frankfurter when he addressed a similar conflict for the Supreme Court concerning the Federal Tort Claims Act:

The broad and just purpose which the statute was designed to effect was to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable.... Of course, when dealing with a statute subjecting the Government to liability for potentially great sums of money, this Court must not promote profligacy by careless construction. Neither should it as a

> self-constituted guardian of the Treasury import immunity back into a statute designed to limit it. [*Indian Towing Company v. United States, supra,* 350 U.S. at 68-69.]

Accordingly, we modify the holding announced in *Bradshaw,* and conclude that the language waiving immunity from tort liability set forth in the Prince George's County Charter, and as is also contained in the specific authorization in the Express Powers Act, makes the county liable for the negligent conduct of all of its employees occurring in the course of their employment, without regard to their status as public officials.[15]

Turning lastly to the claim of immunity raised by appellee Volunteer Fire Company of West Lanham Hills, Maryland, Inc., we find that the record does not contain the information necessary to reach a conclusion on this issue. Consequently, we will remand, without affirmance or reversal, this matter to the trial court for further proceedings and decision in accord with the views we now express. Md. Rule 885.

Initially, we mention that the mere fact that the fire company is a nonprofit corporation does not mean that it is entitled to charitable immunity. It is well-settled that charitable immunity in Maryland exists and is founded upon what has come to be known as the "trust fund theory," *i.e.,* "damages cannot be recovered from a fund held in trust for

---

**15.** By this decision we do not hold or imply that all acts or omissions by government bodies or officials may form the basis for recovery against the authority involved. Even though the statute before us contained no exception for discretionary functions or duties such as that contained in the Federal Tort Claims Act, we (as have a number of our sister states under similar circumstances) recognize that by implication there are certain discretionary policy-making, planning or judgmental governmental functions which cannot be the subject of traditional tort liability and thus remain immune from scrutiny by judge or jury as to its wisdom. Public policy and the maintenance of the integrity of our system of government necessitate such an exception for, in the words of Mr. Justice Jackson, "Of course, it is not a tort for government to govern." Although there is no occasion at this time for us to further delineate this demarcation, for authorities suggesting guidelines in identifying these activities, see Commercial Carrier Corp. v. Indian River Cty, 371 So. 2d 1010, 1017-22 (Fla. 1979); Evangelical United Brethren Church v. State, 67 Wash. 2d 246, 407 P.2d 440, 444-45 (1965). *Cf.* Frostburg v. Hitchins, 70 Md. 56, 66-67, 16 A. 380, 381-82 (1889); Hitchins v. Frostburg, 68 Md. 100, 109-10, 11 A. 826, 828-29 (1887).

charitable purposes," for to do so "would not be to apply it to those objects whom the author of the fund had in view." *Perry v. House of Refuge,* 63 Md. 20, 27-28, 52 Am. Rep. 495 (1885). *Accord, e.g., Wocd v. Abell,* 268 Md. 214, 240-41, 300 A.2d 665, 678 (1973); *Loeffler v. Sheppard-Pratt Hosp.,* 130 Md. 265, 271, 100 A. 301, 303-04 (1917). *See generally* Note, *The Doctrine of Charitable Immunity — The Persistent Vigil of Outdated Law,* 4 U. Balt. L. Rev. 125 (1974). Thus, only when the assets of the charitable organization are held in trust, either expressly or by implication, and when the corporation has no liability insurance covering the complained of act, Md. Code (1957, 1979 Repl. Vol.), Art. 48A, § 480, does the charitable immunity doctrine apply. Without examining the articles of incorporation of the fire company or taking evidence concerning the form of ownership of its assets, it is impossible to determine the validity of a claim of charitable immunity. *Cf. Annapolis v. W. Anna. Fire & Imp. Co.,* 264 Md. 729, 737, 288 A.2d 151, 155 (1972) (volunteer fire company, although possibly a charitable corporation, not necessarily a charitable trust). Since there has been no factual determination with regard to the status of the present volunteer fire company, but merely an unsupported conclusion that since it was such a company it was immune from suit, as already indicated, we remand its exemption from suit assertion for redetermination in accord with the views we here expressed.

> *Judgment of the Circuit Court for Prince George's County in each case reversed and the cases are remanded to that court for further proceedings.*
> *Costs to be paid by appellees.*

*Murphy, C. J., concurring in part and dissenting in part:*

I agree with the Court that the judgments in these cases must be reversed because, without regard to whether the drivers of the emergency vehicles were "public officers" or not, they were exercising ministerial, as opposed to

discretionary duties, at the time of the accidents as to which, under § 1013 of the County Charter, the County had waived its immunity from suit. I do not agree, however, with the Court's alternate reason for reversing the judgments, namely, that *Bradshaw v. Prince George's County,* 284 Md. 294, 396 A.2d 255 (1979), decided by a unanimous Court a little more than a year ago, wrongly concluded that the County's waiver of governmental immunity under § 1013 was a limited one, not encompassing nonmalicious, negligently performed tortious acts committed by its public officers in the performance of discretionary duties where the public officer was himself immune from liability for his conduct.

Under § 1013 of the County's Charter, as it read at the time of the suit in *Bradshaw,* the County authorized the filing of suits against it "in actions sounding in tort in the same manner and to the same extent that any private person may be sued." We concluded in *Bradshaw* that this language did not constitute a blanket waiver of the County's governmental immunity but rather that it intended to subject the County to derivative liability under the doctrine of *respondeat superior* for the tortious acts of its officers and employees where, but only where, they were themselves legally liable for their acts. We said that by providing that its liability to suit shall be "in the same manner and to the same extent" as that of "any private person," the County accepted liability for those torts, but only those torts, for which a private person would be responsible, either directly or derivatively. Because the police officer sued in *Bradshaw* was a public officer, and therefore not liable under the law of Maryland for discretionary actions negligently performed, we concluded, applying the doctrine of *respondeat superior,* that the County had not waived its immunity and was therefore not liable in such an action. Our position was buttressed somewhat by cases involving Maryland's concededly minority view of non-liability under the interfamily immunity doctrine. *See Stokes v. Taxi Operators Ass'n,* 248 Md. 690, 237 A.2d 762 (1968), and *Riegger v. Brewing Company,* 178 Md. 518, 16 A.2d 99 (1940).

Moreover, because § 1013 was in derogation of the common law of Maryland, thus requiring a strict construction, we interpreted its provisions to subject the County to suit for actionable tortious conduct on the part of public officers for which liability could be imputed to the County, *i.e.,* negligently performed ministerial acts, but not negligently performed discretionary acts.

The majority now interprets § 1013, as it stood when the *Bradshaw* case was filed, and as it now reads, to constitute a total waiver of the County's governmental immunity and to subject it to liability just as if it were a private corporation, so that it will be responsible in damages for the discretionary acts of public officers, negligently as well as maliciously performed. Thus, the simple negligence of county police officers, firemen and jail guards, to mention a few, will subject the County to a damage suit, even though the public officer himself is immune for all but his malicious acts. This result is mandated, according to the majority, by the interpretation placed by other jurisdictions on language similar to that used in § 1013 in effectuating a waiver of governmental immunity. The majority concludes that the provisions of § 1013, assenting to suits "in the same manner and to the same extent" as that of "any private person," constitute a "phrase of art" in immunity statutes throughout the country, uniformly interpreted to mean that the waiver of immunity renders the governmental entity liable for conduct "which would be actionable if . . . done by a private person in a private setting."

While the authorities marshaled in support of the majority opinion are impressive indeed, it is noteworthy that the waiver provisions involved in several of the cases relied upon by the majority to support its construction of § 1013, as well as in other cases, imply an exception from the immunity waiver for discretionary functions performed by governmental officers. *See Commercial Carrier Corp. v. Indian River Cty.,* 371 So. 2d 1010 (Fla. 1979); *Weiss v. Fote,* 7 N.Y.2d 579, 167 N.E.2d 63 (1960); *Harris v. State,* 48 Ohio Misc. 27, 358 N.E.2d 639 (1976); *Evangelical United Brethern Church v. State,* 67 Wash. 2d 246, 407 P.2d 440 (1965).

I do not subscribe to the majority's view that the critical provisions of § 1013 constitute a "phrase of art" inexorably leading to the conclusion that the words used mean what similar phrases have been held to mean in other jurisdictions. In *Bradshaw,* we ascertained that the waiver of immunity was intended by the County to be a limited one. From the outset, the County has steadfastly maintained that its waiver of immunity was limited as set forth in *Bradshaw.* I am satisfied that the Court's construction of § 1013 in *Bradshaw* was correct. In this connection, it is worth noting that engrafted upon the waiver of immunity by the United States in the Federal Tort Claims Act, 28 USCA § 2674, *et seq.* (that the government shall be liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances") is an express exception in § 2680 for claims based upon the exercise or failure to exercise discretionary functions or duties by federal employees, whether the employee abused his discretion or not.