Boston R. HECTOR

v.

Officer James WEGLEIN and Donald D.
Pomerleau and Mayor and City
Council of Baltimore.

Civ. No. K–81–937.

United States District Court,
D. Maryland.

Sept. 1, 1982.

Irwin E. Weiss and Seidenman & Weiss, P.A., Baltimore, Md., for plaintiff.

Robert C. Verderaime and Verderaime & Dubois, Baltimore, Md., for defendant Officer James Weglein.

Benjamin L. Brown, City Sol., Baltimore, Md., for defendants Donald D. Pomerleau and Mayor and City Council of Baltimore.

Millard S. Rubenstein, Asst. City Sol., Baltimore, Md., for defendant Donald D. Pomerleau.

J. Shawn Alcarese, Asst. City Sol., Baltimore, Md., for defendant Mayor and City Council of Baltimore.

FRANK A. KAUFMAN, Chief Judge.

In this case, two of the defendants, the Mayor and City Council of Baltimore

(City) and Donald D. Pomerleau, the former Police Commissioner of Baltimore City (Commissioner) have filed motions for summary judgment [1] with regard to the federal claims stated against them by plaintiff, Boston R. Hector (Hector), under 42 U.S.C. § 1983 and also under Maryland law pursuant to pendent jurisdiction. The third defendant, Baltimore City Police Officer James Weglein (Weglein) has filed no pretrial motions as to Hector's § 1983 claims against him. However, Weglein does seek dismissal prior to trial of Hector's complaint against him under Maryland law for malicious prosecution. Subject-matter jurisdiction over all of Hector's § 1983 claims exists pursuant to 28 U.S.C. § 1343(3). Whether pendent jurisdiction should be exercised by this Court in connection with any of Hector's state-law based contentions raises questions for threshold determination herein.

In his Complaint, Hector alleges that on April 22, 1980, at about 1:20 p.m., he was standing on the north side of Lexington Street, west of Paca Street, in Baltimore City, eating peanuts when he was told to "move on" by Weglein. As Hector was walking away, Weglein allegedly grabbed Hector and, allegedly without provocation, kicked him, knocked him against the wall of the Lexington Market and then began beating him while he (Hector) fell helplessly to the ground. Weglein then arrested Hector, again allegedly without any probable cause, and initiated criminal proceedings against him in the District Court of Maryland for Baltimore City, charging him (Hector) with assault and disorderly conduct. On June 6, 1980, the charges against Hector were dismissed by that Court because Weglein failed to appear.

In Count I of his Complaint, Hector asserts that Weglein's willful and/or wantonly or grossly negligent actions, taken under color of state law, in bad faith and without a reasonable belief in their legality, deprived him (Hector) of his constitutional rights to due process and equal protection of the laws, thereby giving rise to a cause of action under § 1983, and also caused him severe injuries and loss of time from his employment. In Counts II and III, Hector asserts § 1983 claims against both the Commissioner and the City, respectively. In those counts, Hector first claims that "Weglein was at all times in the course of his conduct ... the agent, servant and/or employee of" the Commissioner and the City, that the Commissioner and the City "ratified, consented to or acquiesced in the acts of" Weglein by failing to dismiss him despite previous charges against him of excessive force. Second, in those two counts, Hector claims that the Commissioner and the City were "grossly and culpably negligent ... in the selection, appointment, training, supervision and retention of" Weglein and in failing to dismiss Weglein despite such previous charges of excessive force. Third, Hector claims that the City was "grossly and culpably negligent ... in directing ... [the Commissioner] to retain" Weglein in the light of such previous charges of excessive force and that the City "instituted, adopted or acquiesced in policies that deprived [him] of [his] constitutional rights." Hector claims that his injuries "were caused by the willful or grossly negligent acts of the" Commissioner and by the policies "instituted, adopted or acquiesced in" by the City.

Hector also asserts claims against Weglein under Maryland law for assault and battery as an intentional tort (Count IV) and in negligence (Count VII), for malicious prosecution (Count X) and for false arrest and imprisonment (Count XIII). In Counts V, VIII, XI and XIV, Hector contends that the Commissioner "is vicariously liable" for the common-law torts committed upon Hector by Weglein, the Commissioner's "agent,

---

1. The original motions to dismiss filed by the City and the Commissioner were both supported by affidavits. Additionally, both the City and the Commissioner have filed answers to interrogatories, which are appropriate summary judgment materials under Fed.R.Civ.P. 56(e). Accordingly, under Fed.R.Civ.P. 12(b), the motions of the City and Commissioner, respectively, are treated herein as motions for summary judgment pursuant to Fed.R.Civ.P. 56.

servant and/or employee," as well as "directly liable and responsible" and/or "grossly and culpably negligent ... in the selection, appointment, training, supervision and retention of" Weglein and in failing to dismiss Weglein despite previous complaints against him of excessive force. In Counts VI, IX, XII and XV, Hector makes substantially identical assertions against the City and claims, in addition, that the City is "directly liable and responsible" for said common-law torts and/or "grossly and culpably negligent ... in directing its agent, servant, and/or employee," the Commissioner, "to retain" Weglein as a Baltimore City Police Officer despite the previous charges against him of excessive force. Hector urges this Court to exercise pendent jurisdiction over each of his state-law claims against Weglein, the Commissioner and the City. With regard to all of his contentions, whether founded in federal or state law, Hector seeks compensatory and punitive damages, attorney's fees and costs from each of Weglein, the Commissioner and the City.

The Commissioner contends, *inter alia,* that he was at all relevant times an official of the State of Maryland and thus, in his official capacity, immune from suit under § 1983 pursuant to the Eleventh Amendment and that, in any event, he in no way directly contributed to or was in any way involved in the alleged deprivation of Hector's constitutional rights. The City contends, *inter alia,* that members of the Baltimore City Police Department (Department) such as Weglein are agents of the State of Maryland and thus not employees or agents of the City and that the City could not have caused Hector's alleged injuries since it (the City) possesses no control over the management of the Department, which is not an agency of the City, *de facto* or otherwise, but an agency of the State of Maryland. Additionally, the City contends that Hector has no remedy against it for the common-law torts of Weglein.

## STATE/CITY ISSUE

The initial issue presented in this case is whether the Eleventh Amendment protects the Commissioner and the Department herein because the Commissioner is a state rather than a city official and the Department is a state rather than a city agency. In *Wilcher v. Curley,* 519 F.Supp. 1 (D.Md. 1980 & 1981), this Court wrote (at 3–5):

Herein the record establishes:

(1) The City determines the amount of revenue to be allocated for the Department and provides about two-thirds of that revenue. The remaining third comes from the State.

(2) The number of employees the police department has from time to time depends upon the funds made available by the City and upon the Commissioner's determination of the number of employees those funds can adequately compensate.

(3) All employees of the Department are paid directly by the City, and are covered by the same medical and hospital insurance as that which is available to employees of the City in general.

(4) The Commissioner reports to the Mayor and to the City Council on a regular and also on an as-needed basis.

(5) The estimates by the Commissioner of the amount of money needed to fund the Department, review of those estimates, and subsequent appropriations are subject to the same fiscal policies and procedures as are applicable to other municipal agencies.

(6) The Civil Service Commission of Baltimore, a City agency, conducts examinations for positions in the police department and supplies the Commissioner with a list of candidates.

(7) The Commissioner reports at certain intervals to the Governor of the State of Maryland (Governor), to the Mayor of the City of Baltimore, and to the Baltimore City Council (City Council). He also submits to the City Council a mid-year fiscal report on Department operations.

(8) The Commissioner rarely consults with the Mayor. Before July 1, 1979, the Commissioner frequently consulted with

the Assistant Attorney General of Maryland who, up to that time, acted as counsel to the Department. Since July 1, 1979 the Commissioner has been represented by the City Solicitor for Baltimore City.

(9) The salary of employees of the Department is set by the Mayor and City Council. Employees of the Department other than the Commissioner are paid by the City. The Commissioner receives $45,000 per annum, $15,000 of which is paid by the State.

(10) Department contracts are made and executed in the name of the City.

(11) The Mayor appoints the Commissioner and has the power to remove the Commissioner. Such power to appoint and to remove was given to the Mayor by the Maryland legislature in 1976 by certain statutory amendments to Section 16–5 of the Code of Public Local Laws of Baltimore City which became effective July 1, 1976.[6]

(12) The Baltimore City Local Laws, section 16–2(a) declares that the "Police Department of Baltimore City is hereby constituted and established as an agency and instrumentality of the State of Maryland." However, that declaration is not in itself determinative of whether the Department is a city or a state agency for § 1983 purposes since state and local law are only one of several indicators of an agency's status. *See Patterson v. Ramsey*, 413 F.Supp. [523, 529 (D.Md.1976), *aff'd*, 552 F.2d 117 (4th Cir.1977).]

\* \* \* \* \* \*

While the Department and the Commissioner are hybrid creatures, the City exercises such substantial control over the day-to-day activities and policies of the Department that if there was something major amiss in the Department in the time period involved in these cases the City and/or the Commissioner either would or should have known about it, and would or should have taken steps toward cure of the same. As Judge Young suggests in *Patterson v. Ramsey, supra,* nothing more is required to eliminate the Eleventh Amendment bar. Accordingly, the motions of the City and the Commissioner to dismiss these cases as to them on the grounds that those defendants are state and not city connected must be denied.

---

[6] The 1976 Amendment did not affect the term of Commissioner Pomerleau who was then in office. That term ended on July 1, 1978, at which time Commissioner Pomerleau was reappointed. *Vanguard Justice Society, Inc. v. Hughes,* 471 F.Supp. 670, 689 & n. 48 (D.Md.1979). The incident involved in *Richman* allegedly occurred on March 24, 1977; the incident in *Wilcher* on September 11, 1976. Thus, when the incidents complained of herein took place, the Commissioner was completing a term to which he had been appointed by the Governor. However, the requirement noted *supra* of annual report to the Governor was seemingly eliminated effective July 1, 1976; after that the Commissioner was only required to report to the Mayor and City Council. *Id.* at 692.

In the within case, the record establishes, *inter alia,* the following: The Commissioner, not the City, determines the number of positions needed by the Department. While the Baltimore City Civil Service Commission provides the Department with a list of qualified candidates for open positions, the Commissioner, not the City, determines which candidates will be hired and which officers will be retained. The Department, without interference from the City, promulgates personnel policies and the City has no authority to terminate any officer for any reason. While the City provides some of the funding for the Department (less than thirty-five percent in 1981 with the remainder coming from the State and Federal Governments) and pays the officers' salaries, the Department has its own benefit programs and the City provides no insurance for workmen's compensation or tort claims related to the Department. In addition to salaries and limited funding, the City also provides a contingency fund of $100,000 per year for the use of the Commissioner.[2]

---

2. In the past ten years, however, only $47,728 has been used from the $1 million available in the fund.

■ On the basis of the record herein, this Court reaches the same conclusion as it reached in *Wilcher*—i.e., that the Commissioner and the City cannot escape liability under § 1983 on Eleventh Amendment grounds. The Commissioner and the Department are sufficiently city-connected so as not to be entitled to the claimed Eleventh Amendment protection. Two factors not present in *Wilcher* strengthen that conclusion. First, at the time of the alleged events in this case, the Mayor, subject to the approval of City Council, had the power to appoint and to remove the Commissioner for cause, Baltimore City Local Laws Art. 16–5, and had actually appointed the Commissioner to the term he was then serving. As noted in *Wilcher,* at the time of the alleged incidents in those cases, the Commissioner was serving under the appointment of the Governor.[3] Second, at the time of the alleged events in this case, a City agency, the Complaint Evaluation Board (CEB), had the power to investigate and review "complaints lodged by members of the general public regarding alleged acts of discourtesy and excessive force by personnel of the Police Department of Baltimore City." Baltimore City Local Laws Art. 16–41(a). The CEB, however, has no power to "affect or change the methods and procedures for suspension or dismissal of members of the Baltimore City Police Department." *Id.* Art. 16–46. The Board's sole function is to make recommendations to the Commissioner, who alone is empowered to act; however, the Commissioner may not act until the recommendation of the CEB has been reviewed. *Id.* Art. 16–44.

"The Complaint Evaluation Board (C.E.B.) of Baltimore City is created to provide a permanent, statutory agency in Baltimore City through which complaints lodged by members of the general public regarding alleged acts of discourtesy and excessive force by personnel of the Police Department of Baltimore City are to be processed and evaluated." *Id.* Art. 16–41(a). The membership of the CEB is composed of the State's Attorney of Baltimore City, the Police Commissioner of Baltimore City, the Executive Director of the Legal Aid Bureau, Inc., the Executive Director of the Maryland Human Relations Commission, and the Executive Director of the Baltimore City Community Relations Commission. *Id.* Art. 16–41(b). The City contends that the CEB is a state, not a city, agency and that the City Solicitor in his capacity as a member of the CEB is acting as an agent of the State of Maryland, not the City. However, the City has submitted no authority in support of those contentions and this Court finds them unpersuasive. In any event, however, even if the CEB is a state agency and even if the City Solicitor is, in his capacity as a member of the CEB, an agent of the State of Maryland, the existence of the CEB, coupled with the City's power to remove the Commissioner, adds up to sufficient City involvement in and knowledge of the affairs of the Department and the actions of the Commissioner, as well as sufficient power to affect the same if serious abuses are occurring, so as to prevent either the Department or the Commissioner, respectively from successfully claiming immunity as state agency and as state officer.

The control by the City over the appointment and removal of the Commissioner and the existence of the CEB constitutes even greater involvement of the City in the actions of the Commissioner and the operation of the Department than existed at the time of the alleged incidents in *Wilcher.* Thus, at least to the same degree as in *Wilcher,* if not more so, "if there was something major amiss in the Department in the time period involved in [this case] . . . the City and/or the Commissioner either would or should have known about it, and would or should have taken steps toward cure of the same." Under those conditions the Eleventh Amendment bar is not available to the City and the Commissioner herein for the reasons set forth in *Patterson* and in *Wilcher.* Accordingly, the contentions of the City and Commissioner that Hector's complaint should be dismissed on Eleventh Amendment grounds is rejected.

---

**3.** 519 F.Supp. at 4 n. 6. That footnote is set forth in full, *supra* at pp. 5–6.

## MERIT ISSUES

Hector seemingly asserts liability on the part of the City and/or the Commissioner on at least four grounds: (1) inaction and retention of Weglein despite previous charges against him of excessive force; (2) grossly negligent selection, appointment, training and supervision; (3) the City's directing the Commissioner to retain Weglein despite previous charges of use of excessive force by Weglein; and (4) the City's institution, adoption or acquiescence in policies which deprived Hector of his constitutional rights.

Any discussion of municipal liability under § 1983 must, of course, begin with the Supreme Court's decision in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in which the Supreme Court held that "[l]ocal governing bodies . . . can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or where the action is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Id.* at 690–91, 98 S.Ct. at 2035–2036. In order to recover under those principles against a municipality, a plaintiff must establish both a municipal policy or custom and a causal link between such policy or custom and the alleged constitutional injury.

Herein Hector relies primarily on the actions and/or inaction of the Commissioner in retaining Weglein despite previous charges against him of excessive force and the City's acquiescence and/or participation in the same. A municipal policy or custom can be inferred from the acts or omissions of municipal supervisory officials, as Chief Judge Pettine wrote in *Leite v. City of Providence,* 463 F.Supp. 585, 589 (D.R.I. 1978):

> In light of *Monell,* this Court now examines the degree of culpability a municipality must exhibit in order to be liable

under section 1983. It is elementary that a municipality can only act through its high level, supervisory officials. Thus, although a municipality cannot be held liable under section 1983 on the theory of respondeat superior, it may be held liable if it acts "directly" through those officials who set and supervise municipal policy. In this case, City officials did set the policies involved in hiring, training and supervising the police force and allegedly were negligent in structuring or enforcing these policies. Because a municipality acts through its high level officials and occupies a supervisory position, this Court may determine the scope of municipal liability by relying upon those precedents which discuss the degree of culpability required under section 1983 by one in a supervisory position.

*See also Turpin v. Mailet,* 619 F.2d 196, 200–01 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980), in which Judge Mansfield noted that "an 'official policy' within the meaning of *Monell*" can "be inferred from informal acts or omissions of supervisory municipal officials."

In *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the Supreme Court denied plaintiffs' prayer for injunctive relief under § 1983 because the plaintiffs had failed to establish an "affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by petitioners—express or otherwise—showing their authorization or approval of such misconduct." 423 U.S. at 371, 96 S.Ct. at 604.

The decision in *Rizzo* places severe limits on the extent to which supervisory inaction can form the basis of liability under § 1983. As stated by Judge Newman, then a District Judge, in *Smith v. Ambrogio,* 456 F.Supp. 1130, 1136 (D.Conn.1978):

> What *Rizzo* requires when a supervisor is held liable for failure to prevent continuation of a pattern of prior unconstitutional episodes is that the supervisor be "causally linked" to the pattern. 423 U.S. at 375, 96 S.Ct. 598. There are sure-

ly intimations in *Rizzo* that this causal link cannot be inferred from inaction alone. If such a case can be stated after *Rizzo,* it must present such extreme facts that inaction by a supervisor with knowledge of a pattern of unconstitutional actions by his subordinates is the equivalent of approval of the pattern as a policy of the supervisor and hence tacit encouragement that the pattern continue. Plainly that will not be an easy standard to meet.

*Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), suggests that supervisory inaction must reach the level of "deliberate indifference" before liability under § 1983 will exist. In *Estelle,* the Court held "that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment" and that "[i]n order to state a cognizable claim [under § 1983], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 104–06, 97 S.Ct. at 291–292 (quoting *Gregg v. Georgia,* 428 U.S. 153, 182–83, 96 S.Ct. 2909, 2929–2930, 49 L.Ed.2d 859 (1976)). The Court indicated, however, that an allegation of "inadvertent failure to provide adequate medical care," *i.e.,* of negligence, "does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.,* 429 U.S. at 105–06, 97 S.Ct. at 291–292.

Construing the effect of *Rizzo* and *Estelle,* Judge Pettine stated in *Leite* (463 F.Supp. at 590):

*Rizzo* and its progeny do not find a negligent failure to supervise actionable under section 1983 unless the supervisory officials in some way directly participated in or encouraged the specific instance of misconduct; at a minimum, this standard requires a showing that the municipality, acting through its supervisory officials, implicitly authorized or approved or acquiesced in the misconduct.

... [The] standard of "deliberate indifference" is in accord with lower federal courts that hold "wanton", "reckless", or "grossly negligent" conduct by state officials actionable under section 1983.... *Estelle's* "deliberate indifference" and *Rizzo's* "authorization or approval" standards are also satisfied when a supervisory official failed to act or acted inadequately when he had actual or imputed knowledge of a past pattern of police misconduct or knowledge of well-known, isolated incidents of police misconduct.

(Citations omitted.)

Judge Pettine, however, wrote that "a city's citizens do not have to endure a 'pattern' of past police misconduct before they can sue the city under section 1983." *Id.* Rather,

[i]f a municipality completely fails to train its police force, or trains its officers in a reckless or grossly negligent manner so that future police misconduct is almost inevitable, the municipality exhibits a "deliberate indifference" to the resulting violations of a citizen's constitutional rights. In such a case, the municipality may fairly be termed as acquiescing in and implicitly authorizing such violations. In light of the responsibility, authority, and force that police normally wield, a municipality is fairly considered to have actual or imputed knowledge of the almost inevitable consequences that arise from the nonexistent or grossly inadequate training and supervising of a police force. If the plaintiff's injury results from the complete lack of training or grossly inadequate training of a police force, such an injury is not the result of mere negligence but the result of a deliberate and conscious indifference by the city. The training and supervising of these police officers must be so inadequate and the resulting misconduct so probable, that the city can fairly be considered to have acquiesced in the probability of serious police misconduct.

*Id.* at 590–91. *See also Turpin v. Mailet,* 619 F.2d at 202; *Owens v. Haas,* 601 F.2d 1242, 1246–47 (2d Cir.), *cert. denied,* 414 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Harlee v. Hagee,* 538 F.Supp. 389, 394–97 (E.D.N.Y.1982).

In order for supervisory inaction to form the basis of § 1983 liability, it is necessary that the supervisor have actual or fairly imputable knowledge of the misconduct. In *McClelland v. Facteau,* 610 F.2d 693, 697–98 (10th Cir.1979), Judge Logan stated:

> In order to establish a breach here, plaintiff must show that the defendant was adequately put on notice of prior misbehavior.... Distant rumors that are too vague to prompt action by reasonable persons, or information that is reasonably believed to lack credibility do not provide sufficient notice....
>
> ... If publicity of police misconduct was widespread and credible it may be inferred police chiefs who admitted reading the daily newspapers knew of it. They had ultimate responsibility for what went on in the departments, and it might be found they should and could have taken steps that would have prevented the deprivation of McClelland's rights.

*See also Wright v. McMann,* 460 F.2d 126, 134–35 (2d Cir.) (actual knowledge of jail conditions), *cert. denied,* 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972).

Thus, at least two types of inaction have been recognized by the courts as actionable under § 1983: first, the supervisor knew or had imputed knowledge of a past pattern or acts of police misconduct and did nothing about it; or second, the lack of proper training and/or supervision was so severe as to reach the level of "deliberate indifference" to citizens' constitutional rights.

In this case Hector alleges that the Commissioner had actual or imputed knowledge of previous misconduct by Weglein and that the Commissioner's failure to act with regard to that misconduct resulted in the alleged violation of his (Hector's) constitutional rights. Hector also alleges that the Commissioner's inaction in response to Weglein's previous use of excessive force was a reflection of a policy or custom of the City. The uncontroverted materials submitted by the City and the Commissioner, however, rebut those allegations.

The City relies upon two affidavits filed by the Commissioner in connection with the *Wilcher* cases (both of which affidavits were made after the time of the alleged incidents in the within case and relate to the operations of the Department during the Commissioner's tenure in office) and the answers to Hector's interrogatories filed by the City and Commissioner in the within case. Both those affidavits and answers to interrogatories are appropriate summary judgment materials pursuant to Fed.R. Civ.P. 56(e). The materials filed by the City and Commissioner establish, *inter alia,* the following: No City official is responsible for the training, discipline, promotion, or discharge of members of the Department. Further, no City official has interfered with or sought to direct the management of the Department. In fact, the Commissioner and other officials of the Department have very infrequent contact with the City and do not consult with any City officials as to the management of the Department. Funding has always been sufficiently adequate for the Department's purposes. Further, in any event, the City's fiscal responsibilities to the Department, as well as actual levels of funding, have had no effect on any decision to take disciplinary action against any individual police officer nor have they had any effect on the procedures used to determine the necessity for or the outcome of such disciplinary action. With regard to the specific incident involved herein, the City received no notice of the investigation by the CEB into the alleged events which are the subject of the complaint herein.

The Commissioner has also filed an affidavit stating that he has no personal knowledge of the incidents described in the Complaint herein, that he was not present when the incident complained of by Hector took place and that he (the Commissioner) did not direct or order any of the actions taken by Weglein described in the Complaint. The Commissioner does not exercise direct supervisory control over police officers such as Weglein and has never had personal contact with such officers regarding their daily

assigned duties. Other officers in the Department are responsible for the direct supervision of the police officers in the street.

In opposition to the summary judgment materials submitted by the City and Commissioner, Hector has submitted only several documents obtained through discovery from the Department's Internal Investigation Division, which demonstrate that Weglein had been charged with excessive force on four occasions prior to the incident complained of by Hector herein, that on two of those occasions the charges were sustained, that on one occasion the charge was determined to be unfounded and that on another occasion Weglein was exonerated of the charges. From these documents, Hector asserts that the Commissioner had actual or imputed knowledge of the prior use of excessive force by Weglein, and that the inaction of the Commissioner in failing to take proper steps to ensure that Weglein would not use excessive force in the future reflected the policy or custom of the City.

■ The Commissioner, however, has denied actual knowledge of the previous charges of excessive force against Weglein and Hector has not, after extended discovery, presented any material which would support even an inference that the Commissioner had actual knowledge of those charges. Although Hector has demonstrated that Weglein was previously charged with the use of excessive force on four occasions (two of which charges were sustained by the Department's Internal Investigation Division), those incidents are not enough to demonstrate a pattern of prior practices so as to suggest official acquiescence in or authorization or approval of the actions of the police officer which resulted in Hector's alleged constitutional injury. Indeed, the fact that the incidents were investigated by the Department's Internal Investigation Division indicates strongly that there is no authorization or approval of, acquiescence in, or "deliberate indifference" to the use of excessive force by Baltimore City Police Officers. The establishment of the Complaint Evaluation Board also so suggests.

Hector also has not submitted any material which would give rise to the inference that the severe lack of training or supervision was responsible for the alleged action of Weglein. Although a causal link can in some instances be established between nonexistent or grossly inadequate training and/or supervision and a single incident of excessive force, *see, e.g., Turpin v. Mailet,* 619 F.2d at 202; *Leite v. City of Providence,* 463 F.Supp. at 590–91, Hector has presented no material in this case which suggests such nonexistent or grossly inadequate training or supervision of Baltimore City Police Officers. To the contrary, the Commissioner has submitted uncontroverted summary judgment materials which establish the following: the training standards for Baltimore City Police Officers exceed the standards set for the training of the Maryland State Police; entrance-level training of Baltimore City Police Officers is conducted for a period of no less than twenty weeks; all Baltimore City Police Officers are required to return periodically to the Police Academy for refresher courses, known as "in-service training"; all officers are annually qualified in the use of each and every firearm to which they have access during the course of their normally-assigned duties; all officers undergo roll-call training prior to all scheduled shifts of work; and funding by the City for all types of training has always been adequate. Hector has thus failed to present any material which would give rise to even an inference of a nonexistent or grossly inadequate training and/or supervision.

■ With regard to Hector's claim that the City directed the Commissioner to retain Weglein despite previous charges of excessive force, Hector has failed even to show that the City was aware of the prior charges, let alone that the City directed the Commissioner to retain Weglein despite such charges. Further, the record establishes that, in any event, the City has no power to compel the Commissioner to take such a personnel action.

Hector's claim that the deprivation of his constitutional rights by Weglein was visited

upon him (Hector) pursuant to a policy or policies "instituted, adopted or acquiesced in" by the City is also rejected. Hector has failed to present any indication of the existence of such a policy or policies. *See Turpin v. Mailet,* 619 F.2d at 202–03. Hector's allegations against the City are based not on any position officially adopted by the City, but on the alleged acts and/or omissions of the Commissioner which are asserted to reflect City policy. However, as stated *supra,* Hector has failed to present any material which would give rise to any inference of either culpable action or inaction on the part of the Commissioner.

In sum, since Hector has not, after a more than ample period of discovery, presented any genuine issue of material fact regarding the acts or omissions of the Commissioner or the policy or custom of the City which allegedly caused his alleged constitutional injury, the motions for summary judgment of the City and Commissioner with regard to Hector's § 1983 claims will be granted.

## PENDENT JURISDICTION

Under *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), this Court has power to entertain Hector's pendent claims under Maryland law against the City and Commissioner seeking to hold them directly and/or vicariously liable for the common-law torts of assault and battery, malicious prosecution and false arrest and imprisonment allegedly committed upon Hector by Weglein. Hector's § 1983 claims against the City and Commissioner "have substance sufficient to confer subject-matter jurisdiction on the court," *id.* at 725, 86 S.Ct. at 1138; *see*

*Hagans v. Lavine,* 415 U.S. 528, 536–38, 94 S.Ct. 1372, 1378–1379, 39 L.Ed.2d 577 (1974), and Hector's "state and federal claims . . . derive from a common nucleus of operative fact." *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138. Indeed, the facts underlying Hector's state and federal claims are identical.

■ However, "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Id.* at 726, 86 S.Ct. at 1139. The question arises, therefore, as to whether or not this Court should exercise such discretion in the light of the disposition at the summary judgment stage of Hector's § 1983 claims against the City and Commissioner.[4]

In *Gibbs,* Justice Brennan stated (at *id.*): "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in the jurisdictional sense, the state claims should be dismissed as well." (Footnotes omitted.) It would appear that a majority of courts, both before and after *Gibbs,* have declined to exercise pendent jurisdiction over state claims when the federal claims have been disposed of prior to a full trial on the merits. *See* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3567, at 451–52 n. 34 (1975) (and cases cited thereat). That principle has oft been followed in the Fourth Circuit. *See, e.g., Ancarrow v. City of Richmond,* 600 F.2d 443, 448 n. 5 (4th Cir.), *cert. denied,* 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979); *Sig-*

---

4. The question might arise as to whether or not this Court should exercise "pendent party" jurisdiction over the City and Commissioner with Hector's still-viable § 1983 claims against Weglein as the anchor of federal subject-matter jurisdiction. However, the exercise of such pendent-party jurisdiction, at least in the context of a § 1983 action such as this one wherein subject-matter jurisdiction is based on 28 U.S.C. § 1343(3), would seemingly be foreclosed by the Supreme Court's decision in *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). *Aldinger,* however, does

not preclude consideration of pendent state claims when there exists an independent basis of federal subject-matter jurisdiction in connection with claims against the same party. *See Pitrone v. Mercadante,* 572 F.2d 98 (3d Cir.), *cert. denied,* 439 U.S. 827, 99 S.Ct. 99, 58 L.Ed.2d 120 (1978). In this case, Hector has asserted federal claims against the City and Commissioner substantial enough to confer subject-matter jurisdiction on this Court and to support the exercise of pendent jurisdiction over Hector's state claims. *See* the discussion *supra* in the body of this opinion.

*mon v. Poe,* 564 F.2d 1093, 1096 (4th Cir. 1977); *O'Hara v. Kovens,* 473 F.Supp. 1161, 1167 (D.Md.1979) (Young, J.), *aff'd,* 625 F.2d 15 (4th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981).

■ However, although seemingly stated in mandatory language, Justice Brennan's above-quoted statement in *Gibbs* has not been construed as such. "[T]here are a significant number of cases in which state claims have been retained and decided even though the federal claim was dismissed before trial." 13 C. Wright, A. Miller & E. Cooper, *supra,* at 451–52 (1975). *See id.* at 452 n. 35 (and cases cited thereat). It is now usually considered that it is within the district court's discretion to retain jurisdiction over and to decide state claims even after the federal claims have been resolved before trial and that Justice Brennan's statement in *Gibbs* is an important factor to be considered with regard to the exercise of that discretion but not a mandatory restriction upon either the court's power or the court's discretion to hear the pendent state claims. *See, e.g., Koke v. Stifel, Nicolaus & Co.,* 620 F.2d 1340, 1346 (8th Cir.1980); *In re Carter,* 618 F.2d 1093, 1104–05 (5th Cir. 1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981); *Transok Pipeline Co. v. Darks,* 565 F.2d 1150, 1155 (10th Cir.), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978); *Arizona v. Cook Paint & Varnish Co.,* 541 F.2d 226, 227 (9th Cir.), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977).[5] Indeed, in *Rosado v. Wyman,* 397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970), Justice Harlan noted the discretion of a district court to retain and to decide state claims after the federal claims have been disposed of: "We are not willing to defeat the commonsense policy of pendent jurisdiction— the conservation of judicial energy and the avoidance of multiplicity of litigation—by a conceptual approach that would require jurisdiction over the primary claim at all stages as a prerequisite to resolution of the pendent claim."

**5.** One court has perhaps implied that the policy underlying Justice Brennan's statement in *Gibbs* is not applicable unless the federal claim

■ The relevant factors regarding the appropriateness of this Court's exercise of its discretion to hear Hector's pendent state claims seemingly weigh in favor of the affirmative exercise of that discretion in this case. In *Kavit v. A.L. Stamm & Co.,* 491 F.2d 1176, 1180 & n. 4 (2d Cir.1974), Judge Friendly wrote:

> If it appears that the federal claims are subject to dismiss under F.R.Civ.P. 12(b)(6) or could be disposed of on a motion for summary judgment under F.R. Civ.P. 56, the court should refrain from exercising pendent jurisdiction absent exceptional circumstances.[4]

---

[4] Such circumstances might be found when the defendant fails to call the court's attention to the weakness of the federal claim before the court has invested a substantial amount of time in the case ... [citation omitted]; when the pendent claim significantly invokes question of federal policy, as in *Gibbs* itself ... [citation omitted]; or when dismissal of the pendent claims would otherwise sharply clash with the directive in *Gibbs* that pendent jurisdiction serve the ends of "judicial economy, convenience and fairness to litigants." 383 U.S. at 726 [86 S.Ct. at 1139] ....

*See also Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 196 (3d Cir.1976).

Herein, with regard to the first said "exceptional circumstance," while the Commissioner and the City have not failed timely to call this Court's attention to the weakness of Hector's federal claims against them, this Court and counsel have spent a substantial amount of time with regard to all of Hector's claims, both federal and state, against those two defendants. Further, with regard to the said second "exceptional circumstance," while the pendent state claims against those two defendants do not involve questions of federal policy, they do involve almost identical factual and legal contentions as the federal claims. Accordingly, the third "exceptional circumstance" is present herein and, in accordance with its teaching, failure to exercise pendent jurisdiction over Hector's state-law

is actually *dismissed* on the basis of a motion to dismiss. *Crane Co. v. American Standard, Inc.,* 603 F.2d 244, 254 (2d Cir.1979).

claims against the Commission and the City would "sharply clash" with the aims of "'judicial economy, convenience, and fairness to litigants.'" At this juncture of this case, it is certainly judicially more economical and convenient to adjudicate Hector's state claims against the City and Commissioner rather than to reserve those issues for possible later state court litigation. This case has been pending for over a year and the parties have engaged in and have completed full discovery. Trial is scheduled to commence shortly. It is thus common sense to dispose of all of Hector's claims within this case in order to avoid duplication of effort. *Cf. Rosado v. Wyman,* 397 U.S. 397, 404, 90 S.Ct. 1207, 1213, 25 L.Ed.2d 442 (1970) (when federal claims become moot, court has discretion to hear pendent state claim because "[u]nlike insubstantiality, which is apparent at the outset, mootness, frequently a matter beyond the control of the parties, may not occur until after substantial time and energy have been expended looking toward the resolution of a dispute that plaintiffs were entitled to bring in a federal court"); *Meyer v. California & Hawaiian Sugar Co.,* 662 F.2d 637, 640 (9th Cir.1981) (not abuse of discretion for federal court to resolve pendent state claims after entry of summary judgment against plaintiffs on all of their federal claims "[w]here the court and the litigants had expended considerable time on the pendent claims before the federal claim was dismissed"); *Transok Pipeline Co. v. Darks, supra* (pendent-party jurisdiction exercised over non-Indians' claims when settlement of Indians' claims occurred just before trial, four years after claims had been filed and after two jury trials); *Galella v. Onassis,* 487 F.2d 986, 996 (2d Cir.1973).

▮▮▮▮▮ Hector's claims that the City and Commissioner are directly liable under Maryland law for the common-law torts of Weglein raise no unsettled or complex questions of Maryland law—a factor in the discretionary determination of whether pendent jurisdiction should be exercised, *see Moor v. County of Alameda,* 411 U.S. 693, 716, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973)—and fail for the same reasons that

Hector has failed, for purposes of his § 1983 claims, to establish *any* act or omission (even a simple negligent one) on the part of the City or the Commissioner which caused the deprivation of his (Hector's) constitutional rights by Weglein. Additionally, the City and Commissioner would appear to be immune from suit, at least in their official capacities, under Maryland law. "[I]n Maryland, in the absence of any express legislative waiver of immunity, there can be no recovery against a municipal corporation for any action arising out of the performance of its governmental functions." *Schoonfield v. Mayor & City Council of Baltimore,* 399 F.Supp. 1068, 1087 (D.Md. 1975) (and cases cited thereat) (Northrop, C.J.), *aff'd without published opinion,* 544 F.2d 515 (4th Cir.1975). The operation of a police force is a governmental function. *Quecedo v. Montgomery County,* 264 Md. 590, 596–97, 287 A.2d 257 (1972); *Wynkoop v. Mayor & Council of Hagerstown,* 159 Md. 194, 201, 150 A. 447 (1930). This Court is not aware of any legislative waiver of the City's immunity. Maryland law does not recognize either the direct or vicarious liability of a municipality for the actions of police officers. *See Quecedo v. Montgomery County, supra; State v. Baltimore County,* 218 Md. 271, 146 A.2d 28 (1958); *Wynkoop v. Mayor & Council of Hagerstown, supra.* Further, under Maryland law, the Commissioner, as a public official, is immune from suit for all nonmalicious acts. *Thompson v. Anderson,* 447 F.Supp. 584, 598 (D.Md.1977) (Kaufman, J.); *Duncan v. Koustenis,* 260 Md. 98, 104, 271 A.2d 547 (1970); *Clark v. Ferling,* 220 Md. 109, 114–15, 151 A.2d 137 (1959); *Cocking v. Wade,* 87 Md. 529, 40 A. 104 (1898). The summary judgment materials presented herein demonstrate, without any factual controversy, the lack of any malice on the part of the Commissioner or, for that matter, on the part of the City. In fact, Hector has not even alleged that either the City or the Commissioner acted with malice.

Because Hector's state-law claims against the City and the Commissioner cannot survive those defendants' motions for summa-

ry judgment, there is no possibility in this case of any jury confusion—identified in *Gibbs* as still another factor to be considered in determining whether or not, as a matter of discretion, to exercise pendent jurisdiction, 383 U.S. at 726, 86 S.Ct. at 1139; *see also Moor v. County of Alameda,* 411 U.S. at 716, 93 S.Ct. at 1799—because of this Court's exercise of pendent jurisdiction over Hector's said state claims. Additionally, Hector's within state claims against the City and the Commissioner are truly "pendent" to the federal claims and thus it cannot be said that the "state claim constitutes the real body of the case to which the federal claim is only an appendage." *Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1140.

Practically speaking, there would appear to be little, if any, difference between deciding all of Hector's claims against the City and the Commissioner, state and federal, on the merits after a full trial—which would clearly be an appropriate exercise of discretion under *Gibbs* [6]—and deciding such claims on the merits on the basis of motions for summary judgment.

 It is also to be noted that certain of Hector's state claims may now be barred by limitations. For example, Hector seeks to hold the City and Commissioner vicariously and/or directly liable for the assault and battery committed upon Hector by Weglein. Maryland law provides a one-year limitations period for actions for assault and battery, Md.Cts. & Jud.Proc.Code Ann. § 5–105, and that period has already passed.[7] The American Law Institute proposes that

[i]n any case . . . in which claims arising under State law remain pending after disposition of the federal claim that is the basis for jurisdiction, the district court shall have discretion either to adjudicate the remaining State claims, or, *if it finds that determination of such claims in a State court is in the interest of justice and not prejudicial to the parties,* to dismiss the State claims.

American Law Institute, *Study of the Division of Jurisdiction Between State and Federal Courts* 29 (1969) (proposed 28 U.S.C. § 1313(c)) (emphasis added). Hector may be prejudiced by possible limitations problems if this Court declines to exercise pendent jurisdiction over Hector's state claims. The possibility that a state forum will not be available is a substantial factor to be considered in determining whether or not to exercise pendent jurisdiction. *See, e.g., Henson v. Columbus Bank & Trust Co.,* 651 F.2d 320, 325 (5th Cir.1981) (if, after dismissal of pendent state claims, plaintiff discovers that such claims are time-barred in state court, federal court should grant motion for reconsideration of decision declining to exercise pendent jurisdiction); *Pharo v. Smith,* 625 F.2d 1226, 1227 (5th Cir.1980) ("That a plaintiff's state law claims will be time-barred if dismissed is certainly a factor, if not a determinative factor, a district court should consider in deciding whether to maintain jurisdiction over pendent state claims once the federal claims have been resolved."); *Federman v. Empire Fire & Marine Insurance Co.,* 597 F.2d 798, 809 (2d Cir.1979); *O'Brien v. Continental Illinois National Bank & Trust Co.,* 593 F.2d 54, 64–65 (7th Cir.1979) (and cases cited thereat); *cf. Williams v. Johnson,* 386 F.Supp. 280, 289 (D.Md.1974) (Kaufman, J.) (pendent jurisdiction not exercised where, *inter alia,* such action did not deprive plaintiff of a forum since state limitations period had not run). "[W]hen . . . a plaintiff has pursued his federal claim in good faith and

---

**6.** In *Hagans v. Lavine,* 415 U.S. 528, 545–46, 94 S.Ct. 1372, 1383–1384, 39 L.Ed.2d 577 (1974), Justice White stated that "it is evident from *Gibbs* that pendent state law claims are not always, or even most always, to be dismissed and not adjudicated. On the contrary, given advantages of economy and convenience and no unfairness to litigants, *Gibbs* contemplates adjudication of these claims." *See also Warehouse Groceries Management, Inc. v. Sav-U-*

*Warehouse Groceries, Inc.,* 624 F.2d 655, 658–59 (5th Cir.1980).

**7.** Hector's claims against the City and Commissioner arising out of Weglein's alleged false arrest, false imprisonment and malicious prosecution of Hector would appear to be subject to the three-year limitations period for civil actions generally provided by Md.Cts. & Jud. Proc.Code Ann. § 5–101 and thus not time-barred as of this date.

with diligence, his pendent claim should not be foreclosed by the passage of time required to dispose of the federal claim." *O'Brien,* 593 F.2d at 65.

Therefore, it is appropriate for this Court to exercise its pendent jurisdiction over Hector's state claims against the City and the Commissioner and to grant summary judgment to the said two defendants on the merits of those state claims as well as in connection with Hector's § 1983 claims against those defendants. Accordingly, final judgments in favor of those two defendants will be entered.

## MALICIOUS PROSECUTION CLAIM

There remain for determination Hector's § 1983 and state-law claims against defendant Weglein. Hector and Weglein seemingly agree that those claims present questions of disputed fact and require trial, except that Weglein has moved to dismiss Hector's claim for malicious prosecution on the ground that no such cause of action against a police officer exists under Maryland law.

■ In *Brewer v. Mele,* 267 Md. 437, 440, 298 A.2d 156 (1972), the Maryland Court of Appeals set forth the requisite elements of a cause of action for malicious prosecution:

The necessary elements of a case for malicious prosecution of a criminal charge are well established. There must be: (a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) malice, or a primary purpose in instituting the proceeding other than that of bringing an offender to justice.

In the within case, Hector alleges in Count X of his Complaint that Weglein "did maliciously and without probable cause, initiate criminal proceedings against the plaintiff in the District Court of Maryland" and "[t]hat on June 6, 1980, the charges against the Plaintiff were dismissed in the District Court of Maryland." Those allegations sufficiently state a cause of action for malicious prosecution under Maryland law.

■ Weglein's principal contention is that Maryland law affords police officers immunity against claims of malicious prosecution for actions taken in the performance of the officer's duties. In *Brewer,* however, the Court of Appeals indicated that under Maryland law a police officer's immunity is conditioned "upon nonmalicious conduct." *Id.* at 444, 298 A.2d 156. In the within case, Hector alleges that Weglein acted maliciously and, accordingly, Weglein's motion to dismiss cannot be granted on the basis of immunity.

While the Court in *Brewer,* in dictum, recognized the potential problems with allowing malicious prosecution claims against police officers, the Court did not hold police officers absolutely immune from such claims, but only qualifiedly immune. The Court did not, however, decide the degree of maliciousness that a plaintiff must prove in order to overcome an officer's qualified immunity (*id.* at 445–46, 298 A.2d 156):

We have never been called upon to decide that quality of malice or the means of its proof necessary to forestall governmental immunity. If it be some affirmative showing of ill will, improper motivation, or evil purpose, the undisputed facts might well reveal its total absence prior to trial and permit the assertion of the qualified immunity. If, on the other hand, it is the mere inference of malice permitted to be drawn from the want of probable cause, then even a qualified immunity could never operate short of a determination of the probable cause issue, which is no immunity at all, but a defense upon the merits. While the underlying rationale that justifies and explains the inference of malice as being an apparent motivation for the bringing by a private person of criminal charges without adequate probable cause would seem harshly inappropriate when applied to the law enforcement officer, whose occupational routine is that of bringing offenders to justice, and while strong countervailing social policy might well come into play on behalf of the officer, it is unnecessary to

resolve the question at this time and we explicitly do not do so.

(Footnotes omitted.)

While, at this pretrial stage of these proceedings, it is not necessary for this Court to decide, on a final basis, the state-law malice issue since, in his Complaint, Hector alleges that Weglein acted maliciously, it would appear, in the light of *Brewer,* that the range of malice is from "the mere inference of malice permitted to be drawn from the want of probable cause" on the one hand to an "affirmative showing of ill will, improper motivation, or evil purpose" on the other. Subsequent lower Maryland court opinions indicate that the necessary degree of malice probably tends toward the latter more than toward the former. In *Arrington v. Moore,* 31 Md.App. 448, 462–64, 358 A.2d 909 (1975), the Court of Special Appeals of Maryland noted the statements regarding malice in *Brewer* and, while finding it unnecessary "to provide a narrower definition of malice," (*id.* at 463, 358 A.2d 909) commented upon the Court of Appeals' definition of malice in another context, *i.e.,* the degree of malice required to support an award of punitive damages for a tort arising out of a contractual relationship (*id.* at 464, 358 A.2d 909):

> "Actual or express malice—at least in this context—has been characterized as the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *H & R Block, Inc. v. Testerman,* 275 Md. 36, 43 [338 A.2d 48]. . . .

In *Davis v. Muse,* 51 Md.App. 93, 101, 441 A.2d 1089 (1982), the court stated:

> [W]e deem it entirely predictable that the Court would not permit the mere inference of malice to be applied to a police officer on the basis of absence of probable cause. . . . In this respect, we note that the lower court in this case included the following in its instruction on malicious prosecution:
>
> > "The word 'maliciously' as used in these instructions means the intention-

al doing of a wrongful act to the injury of the plaintiff, the act having been done with an evil or unlawful motive or purpose.

> "To prove malice there must be an affirmative showing of ill will, improper motivation or evil purpose."

We consider that instruction entirely appropriate.

Accordingly, Hector is entitled to the denial of Weglein's motion to dismiss Hector's state-law claim for malicious prosecution.