**Alice Johnson KEBE**

v.

**Officer Parke BROWN, et al.**

**No. DKC 2000–1772.**

United States District Court, D. Maryland.

Sept. 12, 2001.

John Christopher Belcher, Law office of John Christopher Belcher, Oxon Hill, MD, for plaintiff.

Laura J. Gwinn, Marc E. Curry, Prince George's County Office of law, Upper Marlboro, MD, for defendants.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Two motions are pending in this case alleging unreasonable search and seizure, excessive force, and defamation by police officers[1]. First, Plaintiff, Alice Johnson Kebe, on behalf of K.J., her minor daughter, has filed a motion for partial summary judgment on the issue of liability or, in the alternative, for the court to ascertain undisputed material facts. Second, Defendant Corporal Parke Brown has filed a motion for summary judgment based on qualified immunity and public official immunity. The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For the reasons

---

**1.** Parke Brown is the only named defendant. Several "John Does" are listed in the complaint, but no timely motion to amend was ever filed by Plaintiff.

that follow, the court shall grant Plaintiff's Motion for Partial Summary Judgment on the issue of the legality of the stop, deny Defendants' Motion for Summary Judgment with respect to the § 1983 claim, and grant Defendant's Motion for Summary Judgment with respect to the state law claims for battery and defamation.

### I. *Background*

The following facts are undisputed. This case arises from an incident occurring on or about June 14, 1999. At approximately 4:00 pm, Defendant, Prince George's County Police Corporal Parke Brown and his partner, Officer Gerald Knight, responded to a dispatch call that a group of 4 or 5 black males, one of them allegedly wielding a chain as a weapon, were chasing another black male. Paper no. 18, Ex. H, 911 Call and Response of Units, at 6. One of the black males was described by the dispatcher as having corn-rows and wearing a white t-shirt. He was wielding a large chain as a weapon. *Id.* at 8. The dispatcher received this information from a tip called in by a woman living in the neighborhood who gave her address, but no other information. The dispatcher's description was, in fact, a misstatement of the original 911 call in which the tipster described separate black males, one with corn rows and another one with a white t-shirt who may have been the one carrying the chain. Additionally, the tipster did not claim that this youth was wielding the chain as a weapon. *Id.* At 5.

Defendant and his partner spotted Plaintiff's daughter, K.J., a 14 year old female, talking to a black male youth (her cousin). Immediately before the stop, Officers Brown and Knight witnessed two more black male youths running towards K.J. and her cousin from a school bus stop at the top of a hill 15 to 20 yards away. Paper no. 17, Deposition of K.J. at 13,

Deposition of Knight at 12. One of these two youths allegedly fit the description of one of the males from the dispatch call. *Id.*, Deposition of Defendant at 64, Deposition of Knight at 13.

When Officer Brown's cruiser pulled up next to K.J. and the other youths, the male who allegedly fit the dispatch description ran from the scene and ducked behind a van. Paper no. 17, Deposition of Knight at 16. Officer Knight pursued and detained this youth, frisked him, ran a background check, explained why he stopped him and released him. *Id.* Meanwhile, Defendant pulled his gun and ordered the other youths, including K.J., to lie on the ground. Paper no. 14, Ex. C, Deposition of Defendant at 46–47. K.J., who had been returning home from running an errand for her mother at a nearby apartment complex, was wearing silk boxer shorts, a tank top and ballerina shoes. Defendant had received no information indicating that a female was involved in the chase or armed. *Id.* at 64,65. It is undisputed that Defendant frisked the two males with K.J., checked the records of K.J. and the two males, found no evidence of criminal activity and released all three. The entire incident lasted ten minutes.

The only material factual issue still in dispute is whether Defendant also frisked K.J. during the stop. Although Defendant agrees that he stopped K.J. and had her lie face down on the ground along with the two males, he denies that he frisked K.J. Paper no. 17, Defendant's Answer to Plaintiff's Interrog. 9. Plaintiff alleges that Defendant frisked K.J., feeling her breasts and placing his hand between her legs and on her pubic area. Paper no. 14, Ex. A, Deposition of K.J. at 25–27.

On the basis of the undisputed facts recounted above, Plaintiff filed a motion for partial summary judgment urging the court to hold that, as a matter of law, the

stop of K.J. violated her Fourth Amendment right against unreasonable searches and seizures. In response, Defendant filed a Motion for Summary Judgment on the ground that he possessed qualified immunity in stopping and detaining K.J. and that, as a result, Plaintiff cannot prevail with respect to those issues in her § 1983 action even taking the facts in the light most favorable to Plaintiff and assuming that he frisked K.J. In addition, Defendant avers that, as a matter of law, the doctrine of public official immunity bars Plaintiff's battery and defamation claims and Plaintiff has adduced no evidence supporting her defamation claim. The court will determine first whether on the facts Plaintiff made out a Fourth Amendment violation and then consider whether Defendant is qualifiedly immune.

## II. *Motions for Summary Judgment*

### A. Summary Judgment Standard

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Pulliam,* 810 F.2d at 1286, *citing Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex,* the Supreme Court stated:

In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984), *quoting Seago v. North*

*Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## B. 4th Amendment violation

Plaintiff contends that, even looking at the facts in the light most favorable to Defendant, Defendant's stop of K.J. violated her Fourth Amendment rights because it was not based on reasonable suspicion to justify an investigatory stop.[2] Any frisk undertaken pursuant to an illegal stop would be unjustified.

■ The Fourth Amendment, in pertinent part, provides individuals the "right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.…" U.S. Const. amend. IV. An individual is seized within the meaning of the Fourth Amendment when that person yields to any official "show of authority" that a reasonable person would interpret as a command to restrict his or her movement. *California v. Hodari D.*, 499 U.S. 621, 627–28, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); *see also Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). It is undisputed that K.J. was seized within the meaning of the Fourth Amendment when she was stopped at gunpoint and told to lie on the ground. The court must determine whether that seizure was unreasonable and so a violation of the Fourth Amendment.

Under *Terry*, "[t]he police can stop and detain a person for investigative purposes 'if the officer has a reasonable suspicion

supported by articulable facts that criminal activity may be afoot.' " *Park v. Shiflett*, 250 F.3d 843, 850 (4th Cir.2001), *quoting United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 675–76, 145 L.Ed.2d 570 (2000).

In *Park*, the Fourth Circuit listed a set of factors articulated by the police as giving rise to reasonable suspicion in that case. The role of the court, then, was to "evaluate the combined strength of these factors in determining whether or not there was reasonable suspicion to detain Mr. Park." *Park*, 250 F.3d at 851, *citing Sokolow*, 490 U.S. at 8–10, 109 S.Ct. 1581. "The bottom line under a reasonable suspicion analysis is that the court must consider the totality of the circumstances-the whole picture—in deciding whether officers had reasonable suspicion." *Park*, 250 F.3d at 851. Therefore, the court must look at the totality of the factors relied upon by Officer Brown in the current case and determine whether he had reasonable suspicion to stop K.J.

The sufficiency of the tip as providing reasonable suspicion is not directly at issue here because, even if it were considered reliable, it provided no independent basis for suspicion of K.J. However, it bears examination because it was one of the factors relied upon by Officer Brown in determining that reasonable suspicion existed to stop K.J. in this particular circumstance.

---

**2.** Plaintiff also asserts that the stop constituted an arrest without probable cause. However, on the facts, the stop did not rise to the level of an arrest and so what is at issue is whether Defendant had reasonable suspicion to justify the stop.

640

■ An officer may rely on information provided by a known third party to establish a reasonable suspicion that could justify an investigatory stop. *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). However, an anonymous tip is not sufficient to establish reasonable suspicion, absent suitable corroboration. *Florida v. J.L.,* 529 U.S. 266, 269–74, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). The Fourth Circuit identified the problems with allowing anonymous tips alone to serve as the basis for Terry stops:

"First, anonymous tips 'alone seldom demonstrate[ ] the informant's basis of knowledge or veracity.'( ). Second, since anonymous tipsters cannot be held responsible for fabricated allegations, permitting such tips to result in a Terry stop would increase the potential for harassment through false accusation. A desire to ensure the informant's credibility and accountability thus underlies the Court's concern with anonymous tips."

*United States v. Christmas,* 222 F.3d 141, 143 (4th Cir.2000), *quoting Alabama v. White,* 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). However, the anonymous tip may be corroborated and serve as the basis for a stop. In *United States v. Perrin,* 45 F.3d 869 (4th Cir. 1995), the Fourth Circuit upheld the constitutionality of an investigative stop based on an anonymous tip when it found that the tip, coupled with the observations of the officers in question, created a "totality of the circumstances—[a] whole picture" that gave rise to a reasonable and articulable suspicion that criminal activity was taking place. *Id.* at 872, *quoting United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)

■ Even if the tip was inadequate to provide reasonable suspicion to make a stop of any of the 4 youths, the stop of the youth matching the dispatch description is likely supported by reasonable suspicion because he ran from the police and ducked behind a van. In the recent Supreme Court decision of *Illinois v. Wardlow,* 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the Court upheld an investigatory stop where the defendant's "headlong flight" from police in a heavy narcotics trafficking area gave rise to reasonable suspicion that he was involved in criminal activity. The Court explained that headlong flight "is not necessarily indicative of wrongdoing, but is certainly suggestive of such." *Id.* at 676. Since the anonymous tip giving his description also provides some suspicion, the combination of the description and the flight justifies the stop.

■ However, nothing about the flight of the one youth can be imputed to K.J. to provide support for reasonable suspicion that she might be engaged in criminal activity or pose a danger. K.J. did not plausibly match even the vague description given to the police by the tipster since the tip did not indicate that a female was involved. The flight of the one youth does not alter K.J.'s status as a bystander with no link to criminal activity.

Defendant does not argue that the tip alone gave him reasonable suspicion of K.J. However, he argues that, in light of the flight of the youth matching the tip, he was "entitled to stop K.J. and the others 'to maintain the status quo momentarily while obtaining more information...in light of the facts known to the officers at the time.'" Paper no. 17, at 5, *quoting Adams v. Williams,* 407 U.S. at 146, 92 S.Ct. 1921. He argues that the stop was reasonably necessary to ensure officer safety because more than one of the youths might have been armed or the youth matching the description on the dispatch might have handed over the gun. Because of the risk to safety, he argues that he could justifiably detain the youths

until he ascertained that they were not armed.

■■  Whether there is reasonable suspicion is based largely on the common sense and experience of the investigating officer. *See Illinois v. Wardlow,* 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). However, the "officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch of criminal activity.'", *United States v. Lester,* 148 F.Supp.2d 597, 600 (D.Md.2001), *quoting Wardlow,* 528 U.S. at 123, 124, 120 S.Ct. 673. It is at this level of particularized suspicion that the current case differs from *Adams,* the case relied upon extensively by Defendant for the proposition that it was reasonable for him to stop K.J. and the others in order to control a potential threat to his safety. In *Adams,* the officer was given a tip by a previously reliable informant that an individual in a specific nearby vehicle had a gun at his waist. *Adams v. Williams,* 407 U.S. 143 at 144, 145, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). In light of these facts, the Court held that it was reasonable for the officer to investigate the vehicle and reach in and take the gun while obtaining more information. *Id.* at 147, 148, 92 S.Ct. 1921. In the case before the Court, only one of the youths, the one who had already run off, allegedly matched the vague description from the dispatch. He was the only one of the four about whom there was any information that might give rise to suspicion that he was armed. Officer Brown's concern that the others might also be armed, unlike the specific facts known to the officer in *Adams,* was based on nothing more than a hunch without an articulable basis. It does not rise above the level of guilt by association. Accordingly, it is inadequate to provide reasonable suspicion.

■  In addition, Defendant asserts that he was concerned that the youth matching the dispatch description might have handed the "gun" to one of the other three youths. Interpreting the facts in the way most favorable to Defendant, it is plausible that he observed K.J. exchanging hugs with the youth matching the dispatch description when he ran down to the group from the bus stop. Pl. Paper no. 14, at 2. It might be possible during the exchange of hugs for the youth to hand over a gun to K.J. However, Defendant did not have reasonable suspicion that any of the youths were armed with a gun. Although Defendant in both his deposition and his briefs refers to his concern that the youth matching the description had a gun, the dispatch report did not provide information about a possible gun, stating only that one of the group of black males was carrying a chain that he may have been wielding as a weapon. Even so, it is possible that the youth could have handed over a chain, but a chain does not present the same risk to the officer and could not plausibly be hidden within K.J.'s tank-top and shorts. Therefore, Officer Brown's concern that the weapon might have been handed off does not provide an adequate basis for reasonable suspicion of K.J.

■  Based on the facts taken in the light most favorable to Defendant, the court finds that no specific individualized articulable suspicion existed under the totality of the circumstances to justify Officer Brown's stop of Plaintiff's daughter. Defendant's stop of K.J. violated her Fourth Amendment rights.

## C.  Qualified Immunity

■  Defendant asserts that even if this court finds evidence of an underlying constitutional violation, he had an objectively reasonable basis for believing in the lawfulness of his acts and thus, should be granted qualified immunity. Under the doctrine of qualified immunity, public offi-

cials such as law enforcement officials are not liable under federal law for civil damages to the extent that their conduct does not contravene "clearly established statutory or constitutional rights of which a reasonable person would have known." *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir.1998), *quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Officers are "entitled to summary judgment on the ground of qualified immunity if they can establish that reasonable officers could have believed that their actions were lawful in light of both clearly established law and the information that the officers possessed at the time." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *See also Gooden v. Howard County,* 954 F.2d 960, 966 (4th Cir.1992). However, "[S]ummary judgment on qualified immunity grounds is improper as long as there remains any material factual disputes regarding the actual conduct of defendants." *Anderson,* 483 U.S. at 641, 107 S.Ct. 3034.

■ The court applies a three-pronged test to determine whether Defendant was qualifiedly immune; the court must 1) identify the right allegedly violated; 2) determine whether the right was clearly established at the time of the alleged violation; and 3) if so, determine whether a reasonable person in the officer's position would have known that his conduct would violate that clearly established right. *See Gould v. Davis,* 165 F.3d 265, 269–73 (4th Cir.1998); *see also Vathekan v. Prince George's County,* 154 F.3d 173, 179–80 (4th Cir.1998). "[T]he steps are sequential: we 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, before proceed[ing] to determine whether that right was clearly established at the time of the alleged violation.'" *Rogers v. Pendleton,*

249 F.3d 279, 286 (4th Cir.2001), *quoting Wilson,* 526 U.S. at 609, 119 S.Ct. 1692 (internal quotations omitted).

The first step of the analysis for qualified immunity is satisfied because, even taking the facts in the light most favorable to Defendant, Plaintiff established that the stop of K.J. violated her Fourth Amendment rights (see above). Because the court is now considering Defendant's motion for summary judgment based on qualified immunity, the court must examine the facts in the light most favorable to Plaintiff and determine whether a reasonable officer in Defendant's position would have known that his conduct violated a clearly established Fourth Amendment right in the specific circumstances of the case.

■ In fleshing out the standard for whether a reasonable person would know that his conduct violated a clearly established right, the court inquires into the "objective legal reasonableness" of the actions; the officers' subjective beliefs are irrelevant. *Anderson,* 483 U.S. at 639, 107 S.Ct. 3034. The tolerance accorded by the qualified immunity defense to " 'good faith' " mistakes of judgment is "deliberately designed to give protection to 'all but the plainly incompetent or those who knowingly violate the law,' in order to avoid undue inhibitions in the performance of official duties." *Pritchett,* 973 F.2d at 313, *quoting Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), *and citing Anderson,* 483 U.S. at 638, 107 S.Ct. 3034.

■ It is not necessary for Plaintiff to show that the exact conduct of the government official in question has been held to be unlawful in order to satisfy the requirement that the statutory/constitutional right was "clearly established," if it is manifest from the existing authority that the conduct was unlawful. *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818

(1999). In order to satisfy this test, the nature of the right allegedly violated must be defined "at a high level of particularity." *Edwards v. City of Goldsboro*, 178 F.3d 231, 250–51 (4th Cir.1999); *see also Anderson*, 483 U.S. at 639–40, 107 S.Ct. 3034. Defined at the appropriate level of specificity, then, the question is whether a reasonable officer could have believed that reasonable suspicion existed to justify the *Terry* stop of K.J. The court finds that a reasonable officer in the position of Defendant would not have concluded that there were articulable facts supporting a reasonable suspicion that K.J. was involved in criminal activity or presented a danger to officer safety.

In order to demonstrate that the contours of the right to be free from investigative stops without reasonable suspicion was well settled by June 14, 1999, the court "may rely upon cases of controlling authority in the jurisdiction in question, or a 'consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.' " *Rogers*, 249 F.3d at 287, *quoting Wilson*, 526 U.S. at 617, 119 S.Ct. 1692. Even the cases relied upon by Defendant in asserting qualified immunity clearly show that the facts he had at hand did not provide a basis for reasonable suspicion. First, Defendant argues that because *Florida v. J.L.* was not decided until 2000, a reasonable officer would not have reason to know that he did not have reasonable suspicion to stop a suspect based solely upon a call from an anonymous tipster. However, in a 1990 case, *Alabama v. White*, the court held that, because "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity," it needs to be corroborated so as to exhibit "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Alabama v. White*, 496 U.S. 325, 329, 327, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). In *White*, the police corroborated an anonymous tip with their own observations bearing out the reliability of the informant's tip before making the investigative stop. Without this independent corroboration, the anonymous tip would not have justified the stop. *Id.* at 329, 110 S.Ct. 2412. In a more recent case, *United States v. Perrin*, 45 F.3d 869 (4th Cir.1995), the Fourth Circuit upheld the constitutionality of an investigative stop based on an anonymous tip only when the tip was corroborated by the officer's own observations so that there was "a 'totality of the circumstances' giving rise to reasonable suspicion." *Id.* at 872, *quoting United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Therefore, even before *Florida v. J.L.*, it would have been clear to a reasonable officer that an anonymous tip without sufficient indicia of reliability was not sufficient to give rise to reasonable suspicion.[3]

Defendant relies extensively upon *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), for the argument that it was reasonable for him to stop K.J. and the others in order to maintain the status quo and control a potential threat to his safety. However, a reasonable officer should have easily distinguished the situation in this case from *Adams*. In *Adams*, the officer was given

---

**3.** Defendant argues that the tip was not, in fact, anonymous because the tipster provided her address. Paper no. 17, at 5. Whether anonymous or not, the tip was likely corroborated sufficiently to establish reasonable suspicion of the youth matching the dispatch description when that youth fled upon arrival of the officers (see above). Therefore, the question to be resolved is whether reasonable suspicion of that youth, and the circumstance created by his flight, justified the stop of K.J. Whether the tip was anonymous or not does not alter the analysis.

a tip by a previously reliable informant that an individual in a specific nearby vehicle had a gun at his waist. *See* 407 U.S. at 145, 146, 92 S.Ct. 1921. In light of these facts, the Court held that it was reasonable for the officer to investigate the vehicle and reach in and take the gun while obtaining more information. *Id.* at 147, 148, 92 S.Ct. 1921. In the case before the court, there was no specific information linking K.J. to any criminal act or threat to officer safety such as justified the stop in *Adams.* The dispatch report never contained any information about a gun. Further, unlike in *Adams,* there was no information linking a weapon to K.J or to anyone fitting her description. As shown above, it was not plausible for Defendant to believe that K.J. was hiding a weapon that had been handed off to her. The situation in *Adams* was sufficiently specific that, given the facts known to the officer at the time, it was reasonable to carry out an investigative stop to protect his safety. However, no reasonable officer would have believed that the facts available to Defendant had the same type of specificity so as to justify a stop here.

Defendant's actions in stopping K.J. fail the test for qualified immunity. Plaintiff articulated a violation of her Fourth Amendment rights to be free from unreasonable seizures. Given the facts available to Defendant, a reasonable officer would have known that his actions in stopping K.J. without reasonable suspicion or a plausible risk to his safety violated her clearly established rights. Accordingly, Defendant's motion for summary judgment is denied and Plaintiff's motion for partial summary judgment as to the illegality of the stop is granted. There remain triable issues of fact regarding damages for the stop, as well as whether Defendant frisked Plaintiff's daughter pursuant to the illegal stop.

### D. State Law Claims

Defendant claims that public official immunity bars the state cause of action for battery. Public official immunity relieves a government official of liability for his negligent acts. *DiPino v. Davis,* 354 Md. 18, 49, 729 A.2d 354, 370 (1999). Two factors required to find this type of immunity are: 1) "the individual actor, whose conduct is at issue must be a public official rather than a mere government employee or agent" and 2) the tortious conduct must have occurred "while he was performing discretionary, as opposed to ministerial acts in furtherance of his official duties." *James v. Prince George's County,* 288 Md. 315, 323–24, 418 A.2d 1173 (1980).

Police officers are public officials who, when carrying out their official duties, receive immunity in the absence of actual malice. *DiPino,* 354 Md. at 49, 729 A.2d at 370; *see also Ashton v. Brown,* 339 Md. 70, 116, 660 A.2d 447, 470, n. 22 (1995) (explaining that statutory public official immunity was meant to codify existing immunity, which applies only to nonintentional torts, and not to extend it). This immunity is meant to protect officers from fear of litigation when they try to preserve public safety. *See generally Pinder v. Johnson,* 54 F.3d 1169 (4th Cir.1995). However, this immunity is not absolute and is inapplicable when a police officer acts with malice. *Md.Code Ann., Cts. & Jud. Proc. § 5–507.*

Thus, in order to pierce the shield of public official immunity and survive summary judgement on her state law claims, Plaintiff needs to demonstrate that, taking the facts in the light most favorable to her, a jury could reasonably believe that Defendant acted with malice. Malice is established by proof that Defendant intentionally performed "an act without legal

justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and wilfully injure Plaintiff." *Williams v. Mayor & City Council of Baltimore,* 359 Md. 101, 131 n. 16, 753 A.2d 41, 57 (2000), *quoting Leese v. Baltimore County,* 64 Md.App. 442, 480, 497 A.2d 159 (1985). Even assuming that the frisk occurred as alleged by Plaintiff, she has put forth no evidence that Defendant performed the stop and frisk with an evil or rancorous motive or that he sought deliberately to injure Plaintiff. While Defendant did stop Plaintiff illegally, neither the stop nor his actions in having Plaintiff lie on the ground while he frisked her for weapons are sufficient evidence that Defendant acted with malice. This type of public official immunity under *DiPino* "is hard to defeat." *McCoy v. Hatmaker,* 135 Md.App. 693, 719, 763 A.2d 1233, 1247 (2000). Plaintiff has not put forth sufficient evidence of malice so, accordingly, the court grants Defendant's motion for summary judgment as to the state law claims.[4]

### III. *Conclusion*

For the foregoing reasons, Plaintiff's motion for partial summary judgment on the issue of the stop shall be granted and Defendant's motion for summary judgment shall be denied. The Defendant's motion for summary judgment shall be granted with regard to the state law claims. A separate order will be entered.

---

**4.** It is not necessary to reach the issue of whether Plaintiff put forth sufficient evidence to support her defamation claim since it too is barred by public official immunity.